Keating, J.
On October 16,1964, Catharina Tooker, a 20-year-old coed at Michigan State University, was killed when the J apáñese sports car in which she was a passenger overturned after "the driver had lost control of the vehicle while attempting to pass another car. The accident also took the life of the driver of the vehicle, Marcia Lopez, and seriously injured another passenger, Susan Silk. The two girls were classmates of Catharina Tooker at Michigan State University and lived in the same dormitory. They were en route from the university to Detroit, Michigan, to spend the weekend.
Catharina Tooker and Marcia Lopez were both New York domiciliaries. The automobile which Miss Lopez was driving-belonged to her father who resided in New York, where the sports car he had given his daughter was registered and insured.
This action for wrongful death was commenced by Oliver P. Tooker, Jr., the father of Catharina Tooker, as the administrator of her estate. The defendant asserted as an affirmative defense the Michigan “guest statute” (C. L. S., § 257.401 [Stat. Ann. 1960, § 9.2101]) which permits recovery by guests only by showing willful misconduct or gross negligence of the driver. The plaintiff moved to dismiss the affirmative defense on the ground that under the governing choice-of-law rules it was New York law rather than Michigan law which applied. The motion was granted by the Special Term Justice who concluded that: “New York State ‘ has the greatest concern with the specific issue raised in the litigation ’ and that New York law should apply.” The Appellate Division (Third Department) agreed with ‘1 the cogent argument advanced by Special Term ’ ’ but felt ‘1 constrained ’ ’ by the holding in Dym v. Gordon (16 NY 2d 120 [1965]) to apply the Michigan guest statute.
We are presented here with a choice-of-law problem which we have had occasion to consider in several cases since our decision in Babcock v. Jackson (12 N Y 2d 473 [1963]) rejected the traditional rule which looked invariably to the law of the place *572 of the wrong. Unfortunately, as we recently had occasion to observe, our decisions subsequent to rejection of the lex loci delictus rule “have lacked a precise consistency” (Miller v. Miller, 22 N Y 2d 12, 15 [1968]; see, also, D. Currie, Comments on Reich v. Purcell, 15 UCLA L. Rev., 595-598). This case gives us the opportunity to resolve those inconsistencies in a class of cases which have been particularly troublesome.
In Babcock v. Jackson (supra) the plaintiff was injured when an automobile in which she was a passenger crashed into a stone wall during a weekend trip with her neighbors to Ontario, Canada. The plaintiff as well as her neighbors, who owned and operated the vehicle, were New York domiciliaries and the car was registered and insured in the State. Upon her return to New York the plaintiff commenced an action to recover for her personal injuries. The Ontario “ guest statute ”, which prohibited suits by guests against negligent hosts, was asserted as a defense.
This court rejected unequivocally the traditional lex loci delictus rule and refused to apply Ontario law. We noted that the traditional rule placed controlling reliance upon one fact which had absolutely no relation to the purpose of the ostensibly conflicting laws and thus resulted in decisions which often frustrated the interests and policies of the State in which the accident had taken place as well as our own State.
We thus observed in the case before us that the purpose of the Ontario guest statute was ‘ ‘ to prevent the fraudulent assertion of claims by passengers, in collusion with the drivers, against insurance companies ” (Survey of Canadian Legislation, 1 U. Toronto L. J. 358, 366) and that, “ quite obviously, the fraudulent claims intended to be prevented by the statute are those asserted against Ontario defendants and their insurance carriers, not New York defendants and their insurance carriers. Whether New York defendants are imposed upon or their insurers defrauded by a New York plaintiff is scarcely a valid legislative concern of Ontario simply because the accident occurred there, any more than if the accident happened in some other jurisdiction.” (12 N Y 2d, supra, p. 483.)
We were careful to distinguish the interest of Ontario in this case from what it would have been, had the issue related to the manner in which the defendant had been driving his car at the *573 time of the accident. “ Where the defendant’s exercise of due care in the operation of his automobile is in issue, the jurisdiction in which his allegedly wrongful conduct occurred would usually have a predominant, if not exclusive concern. In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction’s interest in regulating conduct within its borders, and it would be almost unthinkable to seek the applicable rule in the law of some other place.” (12 N Y 2d, supra, p. 483.)
The issue before us, as Judge Fuld pointed out, was “ not whether the defendant offended against a rule of the road prescribed by. Ontario for motorists generally or whether he violated some standard of conduct imposed by that jurisdiction, but rather whether the plaintiff, because she was a guest in the defendant’s automobile, is barred from recovering damages for a wrong eonoededly committed.” As to that issue we concluded it was New York which had the only interest. “ New York’s policy of requiring a tort-feasor to compensate his guest for injuries caused by his negligence cannot be doubted * * * and our courts have neither reason nor warrant for departing from .that policy simply because the accident, solely affecting New York residents and arising .out of the operation of a New York based automobile, happened beyond its borders. Per contra, Ontario has no conceivable interest in denying a remedy to a New York guest against a New York host for injuries suffered in Ontario by reason of conduct tortious under Ontario law.” (12 N Y 2d, supra, p. 482.)
Babcock v. Jackson (supra) was followed by Dym v. Gordon (16 N Y 2d 120 [1965]). There, the plaintiff and defendant were both New York domciliaries who were taking courses at the University of Colorado during the summer of 1959. The plaintiff and defendant became acquainted at school and on one occasion, while a passenger in a car driven by the defendant, plaintiff was injured when the automobile collided with another vehicle.
Upon her return to New York, the plaintiff commenced an action to recover for her personal injuries. Again, a “ guest statute ” defense, predicated this time on Colorado law, was asserted. The Colorado statute, less severe in its effect than that of Ontario, permitted a guest to recover upon showing of *574 gross negligence. The standard for recovery was apparently intended to lessen the possibility of fraud by requiring the plaintiff to sustain a heavier burden of proof and also may have represented a policy determination that drivers guilty of such reckless conduct be held fully reponsible for their conduct. The assertion of the statute as a defense presented a question similar to that in Babcock v. Jackson (supra).
Judge Burke, speaking for the court, articulated a choice-of-law rule which we have had occasion to apply in numerous cases: “ [I]t is necessary first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a ■ * * * superior interest in having its policy or law applied.” (16 N Y 2d, supra, p. 124.)
In applying the rule to the facts of the case we concluded that the purpose of this guest statute was not only to prevent fraudulent claims against Colorado insurers, but was intended as well to grant injured parties in other cars priority over the “ ungrateful guest ’ ’ in the assets of the negligent driver. Since the case, in fact, involved another vehicle and injured third parties, we concluded that Colorado, unlike Ontario in Babcock v. Jackson (supra), had an interest in the application of its law. Faced with a true conflict of laws, a closely divided court determined that Colorado law ought to govern since the parties had resided in that State for so prolonged a period of time and there, therefore, seemed no unfairness in subjecting them to the law of Colorado.
The decision in Dym v. Gordon, upon which the Appellate Division relied in the instant case, is clearly distinguishable from the facts here. There is here no third-party ‘ ‘ non-guest ’ ’ who was injured and there is no question of denying such a party priority in the assets of the negligent defendant. We cannot, however, in candor rest our decision on this basis in light of a subsequent decision which refused to apply the Ontario guest statute in a case indistinguishable from Dym v. Gordon (supra). (See Macey v. Rozbicki, 18 N Y 2d 289 [1966].)
The primary point of division in Dym v. Gordon (supra) focused not upon the choice-of-law rule quoted earlier (see dissenting opn. of Fuld, J., 16 N Y 2d, supra, pp. 129-130), but *575 rather upon the construction placed on the Colorado guest statute which, upon reflection, we conclude was mistaken.
The teleological argument advanced by some (see Cavers, Choice-of-Law Process, p. 298) that the guest statute was intended to assure the priority of injured nonguests in the assets of a negligent host, in addition to the prevention of fraudulent claims, overlooks not only the statutory history but the fact that the statute permits recovery by guests who can establish that the accident was due to the gross negligence of the driver. If the purpose of the statute is to protect the rights of the injured ‘1 non-guest ’ ’, as opposed to the owner or his insurance carrier, we fail to perceive any rational basis for predicating that protection on the degree of negligence which the guest is able to establish. The only justification for discrimination between injured guests which can withstand logical as well as constitutional scrutiny (see Millington v. Southeastern Elevator Co., 22 N Y 2d 498, 508 [1968]; Glona v. American Guar. Co., 391 U. S. 73 [1968] ; Levy v. Louisiana, 391 U. S. 68 [1968]) is that the legitimate purpose of the statute ■—■ prevention of fraudulent claims against local insurers or the protection of local automobile owners ■—-is furthered by increasing the guest’s burden of proof. This purpose can never be vindicated when the insurer is a New York carrier and the defendant is sued in the courts of this State. Under such circumstances, the jurisdiction enacting such a guest statute has absolutely no interest in the application of its law.
The failure to come to grips with this problem in Macey v. Rozbicki (supra) resulted in a decision which has confused and clouded the choice-of-law process in New York. There the defendants, Mr. and Mrs. Vincent Rozbicki, who were New York domiciliarles, were spending the summer in their home in Ontario. They invited Mrs. Rozbicki’s sister, Miss Jean Macey, to spend a 10-day vacation with them. Miss Macey was injured when an automobile, owned by her brother-in-law and driven by her sister, collided with another vehicle.
The court correctly concluded that New York law governed, but in so doing ignored the rationale of Babcock and Dym in order to avoid a reconsideration of the construction placed on the guest statute. Thus the court wrote: “In the present *576 case the relationship of two sisters living permanently in New York was not affected or changed by their temporary meeting together in Canada for a short visit there, especially since the arrangements for that visit had undoubtedly been made in New York State. Every fact in this case was New York related, save only the not particularly significant one that the particular trip on the day of the accident was between two points in Canada. ’ ’ (18 N Y 2d, supra, p. 292.)
Substituted for a rational choice-of-law rule was a me'thod of decision based on contact counting—a method open to the same criticism of unreasonableness as the earlier lex loci delictus rule. This analysis has been rejected in subsequent opinions. (Matter of Crichton, 20 N Y 2d 124, 133-134 [1967], adopting the approach of the concurring opinion in Macey v. Rozbicki which adhered to the Babcock rule; Matter of Clark, 21 N Y 2d 478 [1968] ; Miller v. Miller, 22 N Y 2d 12 [1968], supra; Intercontinental Planning v. Daystrom, Inc., 24 N Y 2d 372 [1969] .)
Viewed in the light of the foregoing discussion, the instant case is one of the simplest in the choice-of-law area. If the facts are examined in light of the policy considerations which underlie the ostensibly conflicting laws it is clear that New York has the only real interest in whether recovery should be granted and that the application of Michigan law “would defeat a legitimate interest of the forum State without serving a legitimate interest of any other State ” (Intercontinental Planning v. Daystrom, Inc., supra, p. 385).
The policy of this State with respect to all those injured in automobile accidents is reflected in the legislative declaration which prefaces New York’s compulsory insurance law:
‘ ‘ The legislature is concerned over the rising toll of motor vehicle accidents and the suffering and loss thereby inflicted. The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them. ’ ’ (Vehicle and Traffic Law, § 310.)
Neither this declaration of policy nor the standard required provisions for an auto liability insurance policy make any distinction between guests, pedestrians or other insured parties.
*577 New York’s “ grave concern ” in affording recovery for the injuries suffered by Catharina Tooker, a New York domiciliary, and the loss suffered by her family as a result of her wrongful death, is evident merely in stating the policy which our law reflects. On the other hand, Michigan has no interest in whether a New York plaintiff is denied recovery against a New York defendant where the car is insured here.[1] The fact that the deceased guest and driver were in Michigan for an extended period of time is plainly irrelevant. Indeed, the Legislature, in requiring that insurance policies cover liability for injuries regardless of where the accident takes place (Vehicle & Traffic Law, § 311, subd. 4) has evinced commendable concern not only for residents of this State, but residents of other States who may be injured as a result of the activities of New York residents. Under these circumstances we cannot be concerned with whether Miss Tooker or Miss Lopez were in Michigan for a summer session or for a full college education (see Baade, Counter-Revolution or Alliance for Progress? Reflections on Reading Cavers, The Choice-of-Law Process, 46 Texas L. Rev. 141, 168-170).
The argument that the choice of law in tort cases should be governed by the fictional expectation of the parties has been rejected unequivocally by this court. In Miller v. Miller (22 N Y 2d 12, 20, supra) we wrote: “We reject the argument * * * that the choice' of applicable law in this tort action should be determined on the basis of the expectations of the parties as derived from their contact with the State of the place of the accident. Such a determination of the applicable laws is based upon an obvious fiction having little to do with the laws in conflict. * * * ‘ Though our nation is divided into fifty-one separate legal systems, our people act most [of] the time as if they lived in a single one. * * # [They suffer from a] chronic failure to take account of differences in state laws ’. * * * It is for this reason that ‘ [f]ew speculations are more slippery than assessing the expectations of parties as to the laws applicable to their activities, and especially is this true *578 where the expectations relate to the law of torts Cavers, [Choice-of-Law Process], p. [119], 302 * * *).”
Moreover, when the Legislature has chosen to compel an owner of an automobile to provide a fund for recovery for those who will be injured, and thus taken the element of choice and expectation out of the question, it seems unreasonable to look to that factor as a basis for a choice of law. And, even if we were to engage in such fictions as the expectations of the parties, it seems only fair to infer that the owner of the vehicle by purchasing a New York insurance policy which provided for the specific liability ‘ ‘ intended to protect [the] passenger against negligent ir; ury, as well as to secure indemnity for liability, in whatever i-ate an accident might occur ” (Kopp v. Rechtzigel, 273 Minn. 441, 443 [19665]).
The dissenting opinion makes much of the-fact that it was purely “ adventitious ’■’ that Miss Tooker, a temporary resident in Michigan, chose to ride in Miss Lopez’s automobile rather than an automobile owned by a Michigan domiciliary. This factor we aré told requires the application of Michigan law. Choicé-of-law decisions in guest statute cases, the dissent suggests, ought to turn on whether or not it was “ adveiititious ” that the passenger was in a car registered and insured in New York as -opposed to the jurisdiction in which the relationship is seated and has its purpose.
The dissent is, of course, correct that it was “ adventitious ” that Miss Tooker was a guest in an automobile.registered and insured in New York. For all we know, her decision to go to Michigan State University as opposed to New York University may have been “adventitious ”. Indeed, 'her decision to go to Detroit on the weekend in question instead of staying on campus and studying may equally have been ‘ ‘ adventitious ’ ’. The fact is, however, that Miss Tooker went to Michigan State University; that she decided to go to Detroit' on October 16, 1964; that she was a passenger in a vehicle registered and insured in New York; and that as a result of allthese “.adventitious ” occurrences, she is dead and we have a case to decide. Why we should be concerned with what might' have been' is unclear.
Certainly we cannot make believe that the car was registered and insured in Michigan any more.than we can make believe that Miss Tooker is not dead. Moreover, it is difficult to compre *579 kend why we should adopt such “ a rule of make believe ”. The only reason suggested by the dissent is that such a rule is “ a simple rule easy to apply with a high degree of certainty ’ ’ (infra, p. 595). We cannot agree that this is so. But even if we did, we would reject the rule for the same reason-we rejected the lex loci delictus rule which this description more aptly fits. To state the matter simply, we are concerned with rational and just rules and not merely simple rules. (Cardozo, Growth of the Law, Selected Writings of Benjamin Nathan Cardozo [Hall ed.] p. 247; Hopkins, The Formulation of Rules; A Preliminary Theory of Decision, 35 Brooklyn L. Bev. 165, 173.) As Judge Burke noted in Dym v. Gordon (16 N Y 2d, supra, p. 123): “ Our courts now have adopted a rule of choice of law in a conflict situation which looks to reason and justice in its selection of which law should apply and which fits the needs of today’s world where long and frequent travel is no longer reserved to a few-.”
We rejected the lex loci delictus rule because it placed controlling reliance upon one factor totally unrelated to the policies reflected by the ostensibly conflicting laws. The only fact less relevant to those policies in guest statute cases is whether the presence of the guest in the particular automobile was “ adventitious ”.[2]
The dissent concedes that ‘ ‘ there is no total escape from considering the policies of other States. But this necessity should not be extended to produce anomalies of results out of the same accident, with unpredictability, and lack of consistency in determinations. Thus, it is hard to accept the implicit consequence that Miss Silk, the Michigan resident injured in the accident, should not. be able to recover in Michigan (and presumably in New York) but a recovery can be had for her deceased fellow-passenger in the very same accident ” (infra, p. 597).
*580 Applying the choice-of-law rule which we have adopted, it is not an “ implicit consequence ” that the Michigan passenger injured along with Miss Lopez should be denied recovery. Under the reasoning adopted here, it is not at all clear that Michigan law would govern (Gaither v. Myers, 404 F. 2d 216, 224 [D. C. Cir., 1968]). We do not, however, find it necessary or desirable to conclusively resolve a question which is not now before us. It suffices to note that any anomaly resulting from the application of Michigan law to bar an action brought by Miss Silk is “ the implicit consequence ” of a Federal system which, at a time when we have truly become one nation, permits a citizen of one State to recover for injuries sustained in an automobile accident and denies a citizen of another State the right to recover for injuries sustained in a similar accident. The anomaly does not arise from any choice-of-law rule.
Indeed, the rule advanced by the dissent, unlike the rule we ■have adopted, will only foster rather than alleviate such anomalies. Thus, suppose in Babcock v. Jackson (supra) the driver of the vehicle had picked up a hitchhiker in Ontario who was injured along with his guest, Miss Babcock. And suppose in Macey v. Rozbicki (supra) Mrs. Rozbicki had invited her next-door neighbor to go with her and her sister to church and both the Ontario guest and Miss Macey were injured. Under the rule advanced by the dissent, Ontario law would clearly apply to govern the right of the ‘ ‘ Ontario ’ ’ guests since it was purely “ adventitious ” that they were in a New York car father than an Ontario car. On the other hand, the same rule would permit recovery by the “ New York ” guests since it was not “ adventitious ” that they should have been in a New York vehicle at the time. We agree with the dissent that a rule which fosters such 1 ‘ lack of consistency ’ ’ and ‘ ‘ unpredictability ’ ’ without any compensating features is hardly worthy of adoption or consideration.
Before concluding this opinion we cannot fail to take note of one additional argument raised in the dissenting opinion to the effect that the choice-of-law rule articulated in cur recent decisions merely amounts to a rule which will always result in the application of New York law—“a domiciliary conceptualism that rested on a vested right accruing from the fact of domicile ” (Miller v. Miller, 22 N Y 2d, supra, p. 29 [dissenting opinion]). *581 This argument ignores the fact that our decisions since Babcock v. Jackson (supra) have not always resulted in the application of the law of New York and have, indeed, indicated proper recognition and respect for the legitimate concerns of other jurisdictions and the real expectations of the parties. As we recently observed in the course of an opinion in a tort case, “ [w]e must recognize that, in addition to the interest in affording the plaintiff full recovery, there may be other more general considerations which should concern ‘ a justice-dispensing court in a modern American state # * Among other considerations are the ‘ fairness ’ of applying our law where a nonresident or even a resident has patterned his conduct upon the law of the jurisdiction in which he was acting * * * as well as the possible interest of a sister State in providing the remedy for injuries sustained as a result of conduct undertaken within its borders (Miller v. Miller, 22 N Y 2d, supra, p. 19.)[3] This dictum is exemplified by many decisions.
In Intercontinental Hotels Corp. v. Golden (16 N Y 2d 9 [1964]) we enforced a gambling debt incurred by a New York domiciliary while in Puerto Rico. The debt was valid under the laws of that jurisdiction but invalid under our own laws. We noted that what was at issue was the validity of a contractual agreement entered into in accordance with the laws of Puerto Rico and that injustice would result if we were to refuse to enforce the agreement. Judge Burke, speaking for the court, carefully examined the history and purpose of the laws in conflict and he concluded that New York and Puerto Rican law evinced similar legislative concerns and that the difference in effect did not warrant the injustice which would result in interfering with the real expectations of the parties. ‘‘ In the present case there is no indication that the evils of gambling, which New York prohibits and Puerto Rico has licensed will spill over into our community if these debts are enforced in New York courts. The New York constitutional provisions were adopted with a view toward protecting the family man of meager resources from his own imprudence at the gaming tables. * * * Puerto Rico has made provision for this kind of imprudence by allowing the court to reduce gambling obligations or even decline to enforce them altogether, if the court *582 in its discretion finds that the losses are ‘ [in an] amount [which!] may exceed the customs of a good father of a family.’ * * * This regulation is consistent with New York policy and would be properly considered in any case before a New York court which may be asked to enforce a Puerto Rican gambling debt. * * * [I]njustice would result if citizens of this State were allowed to retain the benefits of winnings in a State where such gambling is legal, but to renege if they were losers.” (15 N Y 2d, supra, p. 15.)
In Oltarsh v. Aetna Ins. Co. (15 N Y 2d 111 [1965]) a New York resident was injured in a building in Puerto Rico. Upon her return to New York she commenced a direct action which was authorized under Puerto Rican law but not permitted under New York law. We noted that the New York policy proscribing direct actions was founded upon a concern that prejudice would result if the jury were aware of the presence of insurance in a case in which it was not otherwise relevant. We noted, however, that disclosure of insurance was condemned only where the fact of its existence was irrelevant to the issues and where the reference was made for the purpose of improperly influencing the jury. “ Where, however, the fact of insurance or the existence of an insurer is properly or legitimately in the case, there can be no ground for complaint. * * * Likewise, where an insurer sued for damages stemming from its own breach of contract or commission of a tort, the plaintiff is not denied a right to trial by jury simply because his adversary happens to be an insurance company. ” (15 N Y 2d, supra, p. 118.)
Where the insurance company had issued a policy subjecting itself to suit directly — as required under Puerto Rican law — the presence of insurance was properly in the case. Therefore, New York had no interest in applying its own law which first required an unsatisfied judgment against the tort-feasor before a suit was commenced against the insurance company. On the other hand, Judge Ftjld, speaking for the court, noted that:
‘ ‘ Puerto Rico has a legitimate interest in safeguarding the rights of any persons injured within its borders. Enactment of the statute emphasizes the Commonwealth’s understanding that such injured persons might have to be cared for by it (or its inhabitants) and evidences its intention that certain and prompt compensation, from the tort-feasor’s insurer, be avail *583 able both to those injured and to those who care for them. What the Supreme Court wrote in Watson v. Employers Liab. Corp. (348 U. S. 66, supra), in upholding the constitutionality of Louisiana’s direct action statute, is to the point (p. 72): ‘ Persons injured or killed in Louisiana are most likely to be Louisiana residents, and even if not, Louisiana may have to care for them. Serious injuries may require treatment in Louisiana homes or hospitals by Louisiana doctors. The injured may be destitute. They may be compelled to call upon friends, relatives or the public for help. Louisiana has manifested its natural interest in the injured by providing remedies for the recovery of damages. It has a similar interest in policies of insurance which are designed to assure ultimate payment of such damages.’ ” (15 N Y 2d, supra, p. 117.)
Again in Matter of Clark (21 N Y 2d 478 [1968]) we looked to the law of Virginia, the place where a widow resided, to determine the extent of her share in the estate of her deceased husband, despite the presence of assets of the deceased in this State. We noted that Virginia, as domicile of the husband and wife, was primarily, indeed solely, concerned with the manner in which the wife was provided for after her husband’s death.
These decisions, rendered in various stages of the development of the choice-of-law rule recently articulated, are nevertheless consistent with that rule. (B. Currie, The Disinterested Third State, 28 Law & Contemporary Problems, 754, 757.) They refute completely the implication in the dissenting opinion that we have adopted a rule which will always result in the application of New York law. Bather we have adopted a rule founded in reason and justice which affords easy application in most if not all situations.
The order of the Appellate Division should be reversed, with costs, and the order of Special Term reinstated.

. The Michigan courts have suggested that the purpose of their guest statute is to protect the owner of the vehicle (Castle v. McKeown, 327 Mich. 518 [1950]; Hunter v. Baldwin, 268 Mich. 106 [1934]). It is no longer clear that a Michigan court would apply Michigan law here (see Abendschien v. Farrell, 11 Mich. App. 662 [1968]; House v. Gibbs, 4 Mich. App. 519 [1966]).

. Similar reasons compel the rejection of the rule suggested by the Restatement, 2d, Conflict of Laws, P. 0. D., pt. II, § 159, upon which the dissent relies. Where the guest-host relationship “ arose ” or is “ centered ” is wholly irrelevant to policies reflected by the laws in conflict. Any language in our earlier opinions lending support to a contrary view has, as Judge Burke notes in his concurring opinion (infra, p. 591), been overruled. We would note that there is some question as to whether the portion of the Restatement, relied upon by the dissent, is applicable to the precise facts present here.

. See note, 43 St. Johns L. Rev. 277.