Joseph **GILDENHORN**, as Guardian for Carol Ann Gildenhorn, Plaintiff,

v.

**LUM'S INC.**, et al., Defendants.

Antone F. **GREGORIO**, Plaintiff,

v.

**LUM'S INC.**, et al., Defendants.

Jacob **SCHEIN** and Marvin H. Schein, Plaintiffs,

v.

Melvin **CHASEN** et al., Defendants.

Nos. 70 Civ. 5733, 71 Civ. 1925 and 4218.

United States District Court, S. D. New York.

Dec. 15, 1971.

Sidney B. Silverman, New York City, for plaintiff Joseph Gildenhorn as custodian for Carol Ann Gildenhorn.

Wolf, Popper, Ross, Wolf & Jones, by Howard L. Jacobs, New York City, for plaintiffs Jacob Schein and Marvin Schein.

Lewis W. Schlifkin and Edward A. Berman, Chicago, Ill., for plaintiff Antone Gregorio.

Donovan, Leizure, Newton & Irvine, by James M. Bergen, New York City, for defendants Investors Diversified Services, Inc., IDS New Dimensions Fund, Inc., Investors Variable Payment Fund, Inc., Eugene C. Sit and James R. Jundt.

Royall, Koegel & Wells, by Guy C. Quinlan, New York City, for defendants Lum's Inc. and Melvin E. Chasen.

Simpson, Thacher & Bartlett, by James J. Hagan, New York City, for defendant Lehman Brothers.

White & Case, by David Hartfield, New York City, for defendant Benjamin Simon.

## OPINION

TYLER, District Judge.

Defendants in these consolidated actions have moved to dismiss plaintiffs' complaints upon the ground that they fail to state a claim upon which relief can be granted. Rule 12(b) (6) F.R. Civ.P. Alternatively, all defendants move this court to stay these actions pending a final determination in Sanders v. Lum's Inc. et al., 70 Civ. 5331, a related action pending before this court. Additionally, the individual defendants move that the complaints be dismissed as against them upon the ground that jurisdiction over their persons has not been obtained. Rules 4(e) and 12(b) (2), F.R.Civ.P.[1]

All three of these suits are derivative actions brought on behalf of Lum's Inc.

1. Defendants Sit and Jundt, apparently unaware that I have already granted their prior motions to dismiss by order dated October 25 of this year, once again seek the same relief. As they are no longer defendants in any of these actions, their applications will not be considered.

("Lum's"), a Florida corporation. Jurisdiction is claimed by virtue of diversity of citizenship. The plaintiffs' complaints are predicated on the same facts as S.E.C. v. Lum's et al., 70 Civ. 5280, which is also pending before this court. Briefly stated, plaintiffs' claims are based on defendants' alleged misuse of confidential corporate information. The complaints charge that defendant Melvin E. Chasen, aware as president of Lum's that the firm's 1969 earnings would be lower than had been projected, telephoned from his Florida office to defendant Simon, who is employed in the Chicago, Illinois office of defendant Lehman Brothers, Inc., and told him of the earnings' decline. Simon then transmitted the information to Sit, the portfolio manager at defendant IDS New Dimensions Fund ("Dimensions"), whose offices are in Minneapolis, Minnesota. Sit then conveyed the information to defendant Jundt, a manager and analyst for IDS Variable Payment Fund ("Variable"). It is further alleged that Sit and Jundt then caused Variable and Dimensions to sell their entire holdings in Lum's just before the public announcement of the decline in the 1969 earnings caused the stock to drop several points in trading on the New York Stock Exchange.

Plaintiffs make no argument that any of the federal securities acts would support a claim under the facts of this case. They do argue, however, that a claim for which relief can be granted can be made out under the recent decision of the New York Court of Appeals in Diamond v. Oreamuno, 24 N.Y.2d 494, 301 N.Y.S.2d 78, 248 N.E.2d 910 (1969). Briefly stated, that case held that corporate officers who learn of a drop in corporate earnings by virtue of their fiduciary positions and sell their shares of corporate stock before publishing information as to the loss will be liable to the corporation for any profits made thereby. Plaintiffs urge that Chasen be found liable under *Diamond* even though it is not alleged that he sold any Lum's stock belonging to him and that the remaining defendants be so held under either a "tippee" or general conspiracy theory.

Three issues, thus, are presented to this court by these motions, the first being a choice of law problem. The defendants argue that under the applicable choice of law provisions, these cases should be decided by Florida law. Plaintiffs oppose and urge that their complaints be tested by New York law in general and by Diamond v. Oreamuno, *supra,* in particular. Assuming that *Diamond* would apply, this court would then have to determine whether the complaints herein can state a claim under the holding of that case. Finally, it must be decided whether the activities of the individual defendants fall within any of the provisions of the New York long-arm statute, CPLR § 302(a), so as to allow out of state service to be effected upon them pursuant to CPLR § 313.

■ In actions where jurisdiction is predicated on diversity of citizenship, this court must apply the choice of law rules of the State of New York. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U. S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New York follows the general choice of law principle that the law of the state of incorporation governs the existence and extent of corporate fiduciary obligations as well as the liability for violations of such obligations. Hausman v. Buckley, 299 F.2d 696, 703 (2d Cir., 1962) and cases cited therein; Norte & Co. v. Huffines, 304 F.Supp. 1096, 1110 n.6 (S.D.N.Y., 1968). This rule was expressed in *Diamond* itself when the court stated that as regards the " . . . duties and obligations of directors and officers and their relation to the corporation and its shareholders . . . [t]he primary source of the law in this area ever remains that of the State which created the corporation." Diamond v. Oreamuno, *supra,* at 503, 504, 301 N.Y.S.2d at 85, 248 N.E.2d at 915.

■ The same result would be reached by the "grouping of contacts" approach to choice of law in tort actions as enunciated in Babcock v. Jackson, 12

N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279 (1963). Under this approach, a New York court will apply the law of the state of the "strongest contacts with the cause of action." Stockwell v. Reynolds & Co., 252 F.Supp. 215, 220 n.3 (S.D.N.Y., 1965). It appears from the pleadings that this case centers in Florida rather than in New York. Chasen, a Florida citizen, allegedly received and communicated the information from Florida. Lum's was incorporated, headquartered, and, at least theoretically, damaged in Florida. Most of the other contacts appear to be scattered about the midwest, the only contact with New York being several transactions over the New York Stock Exchange. Additionally, a New York court would give more weight to the Florida contacts under the "governmental interest" theory of choice of law enunciated in Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969), because Florida has the paramount interest in defining and enforcing fiduciary obligations owing to corporations incorporated and doing business within its borders. Accordingly, I find that under any conceivable test, a New York court would apply Florida law to this case.

■ Under present Florida case law, a plaintiff in a derivative action must prove that the corporation has been damaged by the alleged breach of fiduciary trust. Although the highest court in that state has apparently not considered the matter, several District Courts of Appeal have held on various occasions that a complaint which fails " . . . to indicate both wrongful acts and damage to the corporation" must be dismissed. Palma v. Zerbey, 189 So.2d 510, 511 (Fla.App., 1966), cert. denied 200 So.2d 814. (and cases cited therein.)

While it is apparently required that the damage to a corporation be alleged, the Florida cases shed no light on the specificity required for pleading corporate damage. Thus, though the Gildenhorn and Gregorio complaints might be insufficient under Florida law for failing to allege any damage to the corporation at all, the Schein complaint, which contains only a bare allegation that Lum's was damaged, might conceivably be held to be sufficient by a Florida court. Furthermore, I am not unmindful of the possibility that, were a Florida court to hear this case, Diamond v. Oreamuno, *supra.*, would be argued to it. Because of the possibility that the *Diamond* rationale might be followed in Florida, it is desirable that this court determine whether these complaints state a claim under *Diamond* for which relief can be granted.

■ It is clear that the complaints in these actions go far beyond the narrow holding of *Diamond*. In that case, the New York Court of Appeals held that a corporate fiduciary is liable for profits which he realizes from a sale of stock motivated by inside information received by him in his corporate position. None of the defendants in these actions fit into this mold. Chasen, as president and chief operating officer of Lum's, was certainly a fiduciary of that corporation. None of the complaints, however, allege that he did anything more than pass the inside information to defendant Simon, and there are no allegations that Chasen sold any of his Lum's stock or derived any gain, monetary or otherwise, from the sales that ultimately occurred. On the other hand, the mutual fund defendants would have profited if, as alleged, they sold their 83,000 shares of Lum's stock on the basis of Chasen's inside information. It can scarcely be maintained, however, that the mutual fund defendants were officers or directors of Lum's or owed any fiduciary duties whatsoever to that corporation. The broker-dealer defendants fail to come within either of the *Diamond* perimeters as they were not fiduciaries of the corporation and, did not profit by virtue of the sales.

Plaintiffs, of course, urge a more expansive view of *Diamond.* They point to portions of the opinion indicating that the purpose of the holding was to protect the corporation's interest in " . .

maintaining a reputation of integrity, an image of probity, for its management and in insuring the continued public acceptance and marketability of its stock." Diamond v. Oreamuno, *supra.*, at 499, 301 N.Y.S.2d at 82, 248 N.E.2d at 912. Thus, say plaintiffs, if the purpose of *Diamond* is to maintain a corporation's integrity on the securities exchanges, it should make no difference whether an officer or director sells his own stock or passes the inside information to others who in turn sell their stock and profit thereby. While the harm done to the corporation might be equal in either instance, there is evidence that *Diamond* was not intended to cover the latter situation. As Chief Judge Fuld explained, the purpose of that derivative action was to allow individual shareholders to be " . . . 'private Attorney General[s]' to . . . enforce proper behavior on the part of corporate officials." Diamond v. Oreamuno, *supra*, at 503, 301 N.Y.S. 2d at 85, 248 N.E.2d at 915. It is implicit that the jurisdiction of these "private attorney generals" would be limited to the corporation in which they are shareholders. It could not, with any logic, be extended in a derivative action to cover outside individuals, corporations, or institutions who are subject to other private and governmental restraints on their behavior. Furthermore, in affirming the dismissal of the *Diamond* complaint against other board members who were alleged to have aided the defendants in concealing their activities, the New York Court of Appeals made it quite clear that *Diamond* extends only to corporate fiduciaries who actually profit by inside information and does not cover aiders and abettors and/or conspirators. In view of the fact that the New York Court of Appeals could not bring itself to find liability for inter-corporate conspirators, I fail to perceive how this court could extend *Diamond* to cover extra-corporate conspirators and tippees. Accordingly, I conclude that with regard to all defendants save Chasen, the complaints herein fail to state a claim for which relief can be granted.

On the other hand, Chasen, as a corporate officer, might well come within the *Diamond* holding. Although it could be plausibly argued that *Diamond* would not apply to Chasen because of the failure to allege that he sold any stock and profited thereby, it might also be maintained that a New York court could find liability in light of the numerous statements in *Diamond* to the effect that the purpose of the holding is to prevent corporate misfeasance. This question, however, need not be reached because service of process upon Chasen was improper.

■ In diversity actions, this court's jurisdiction is determined by the law of the State of New York. Rule 4(d) (7), F.R.Civ.P. Because Chasen is not a New York resident and was not served in New York, jurisdiction of his person depends on the New York long-arm statute, CPLR § 302(a). It is plaintiffs' assertion that jurisdiction was obtained over Chasen because he set in motion events which culminated with the alleged sale of 83,000 shares of Lum's stock over an exchange located in New York. While I am aware that the scope of CPLR § 302(a) has been broadly construed, I fail to see how it can be read to cover the facts in this case.

■ While it is settled that one can "transact business" within the meaning of CPLR § 302(a) (1) through an agent, Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), a New York court would decline jurisdiction of a defendant who merely telephones a single order from outside the state. Katz & Son Billiard Prods. v. Correale & Sons, 20 N.Y.2d 903, 285 N.Y.S.2d 871, 232 N.E.2d 864 (1967). It seems obvious that Chasen, who did not place the order to sell the Lum's stock in question, did not "purposefully" avail himself "of the privilege of conducting activities" within New York, thereby "invoking the benefits and protections of its laws." Han-

son v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Plaintiffs next argue that the sale of stock over a national exchange in New York was a "tortious act within the state" and that jurisdiction could be found under CPLR § 302(a) (2). While such a sale will confer jurisdiction in some cases, Cooper v. North Jersey Trust Co. of Ridgewood, New Jersey, 250 F.Supp. 237 (S.D.N.Y., 1965), CPLR § 302(a) (2) can apply only where the non-resident defendant committed the tort in New York. That the alleged tort here may have been completed or "came to rest" in New York will not confer jurisdiction unless the acts or omissions complained of also occurred in New York. Feathers v. McLucas, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). Cooper v. North Jersey Trust Co. etc., *supra.,* is not inconsistent as the defendants in that case were physically in New York when they allegedly committed the tort there in issue. As it is nowhere alleged that Chasen committed a tortious act in New York, no jurisdiction of his person can be claimed under CPLR § 302(a) (2).

Finally, there can be no jurisdiction under CPLR § 302(a) (3). As the statute clearly states, the tortious act must cause injury to persons or property in New York. Insofar as none of the non-resident plaintiffs in these cases have alleged that any injury occurred in New York, their invocation of this provision is futile.

Defendant Chasen's motion to dismiss is granted on the ground that no jurisdiction was ever obtained of his person. Rule 12(b) (2) F.R.Civ.P. The motions of the remaining defendants to dismiss under Rule 12(b) (6) F.R.Civ.P. are hereby granted. In view of these rulings, defendants' alternative motion for a stay of these actions need not be reached.

Settle orders accordingly.