John MURPHY and Donna Murphy, Plaintiffs,

v.

ACME MARKETS, INC., Defendant.

ACME MARKETS, INC., Third-Party Plaintiff,

v.

STELLA D'ORO BISCUIT COMPANY, Third-Party Defendant.

No. 84 CV 3667.

United States District Court, E.D. New York.

Dec. 8, 1986.

Catherine V. Granito, Speiser & Kraus, P.C., Suzanne M. Halbardier, Barry, McTiernan & Moore, New York City, for defendant/third-party plaintiff.

Donald T. Rodda, New York City, Levy, Bivona & Cohen, P.C., for third-party defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

In this case based on diversity of citizenship, 28 U.S.C. § 1332(a), the Court is "called upon to wade into New York's choice-of-law quagmire." *O'Rourke v. Eastern Air Lines*, 730 F.2d 842, 847 (2d Cir.1984).

### Facts

Plaintiffs John and Donna Murphy are married and are domiciled in New York. They assert that, due to the defendant's negligence, Mr. Murphy was injured at defendant's loading dock in Jersey City, New Jersey during the course of his employment.

Defendant, a Pennsylvania corporation authorized to do business in New York and New Jersey, asserts that the injuries were due, entirely or partially, to Mr. Murphy's own culpable conduct. In addition, defendant, as third-party plaintiff, has impleaded plaintiff's employer, a New York corporation. The question is whether New York's or New Jersey's law on comparative negligence should apply.

■■■ Under New York law, a plaintiff's contributory negligence, no matter how overwhelming, merely reduces his damage in proportion to his share of fault. *See* N.Y.C.P.L.R. § 1411 (McKinney 1976).[1] Under New Jersey law, a damages award is also reduced in proportion to the plaintiff's share of fault; if, however, plaintiff's fault is greater than defendant's, recovery is barred altogether. *See* N.J.Stat.Ann. § 2A:15–5.1 (West Supp.1986).[2]

Not surprisingly, plaintiff argues that New York law should apply. Defendant and third-party defendant, of course, invoke New Jersey law. Plaintiffs emphasize that New York has a strong interest in applying its loss allocation rules to this case because plaintiffs' own domicile and that of third-party defendant is in New York, and because the defendant is authorized to do business in New York. Defendant and third-party defendant counter that New Jersey's comparative negligence statute is conduct-regulating, and because New Jersey was the locus of the injury and the defendant is authorized to do business in New Jersey, New Jersey has the greater interest.

*Discussion*

In a diversity case, this Court must apply the choice-of-law principles of New York, the state in which the Court sits. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Entron, Inc. v. Affiliated FM Insurance Co.*, 749 F.2d 127, 131 (2d Cir.1984).

In *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985), the New York Court of Appeals reviewed New York's choice-of-law principles for tort actions. There, as here, the parties' domiciles had different rules, and the locus of the tort was a third jurisdiction.

The *Schultz* court noted that New York used to apply the traditional rule of *lex loci delicti* to determine choice-of-law conflicts in tort actions. In *Babcock v. Jackson*, 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963), however, the court abandoned this approach, holding that an action between New York domiciliaries arising from an automobile accident in Ontario, Canada would be governed by New York law, not by Ontario's guest statute, which could have barred recovery.

The *Schultz* court observed that *Babcock* employed both a "grouping of contacts" approach and an "interest analysis" approach. *Schultz, supra,* 65 N.Y.2d at 197, 480 N.E.2d at 684, 491 N.Y.S.2d at 95. Upon examining *Babcock*'s progeny, however, *Schultz* characterized the grouping of

---

**1.** The statute reads:

Damages recoverable when contributory negligence or assumption of risk is established

In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.

N.Y.C.P.L.R. § 1411 (McKinney 1976).

**2.** The statute reads:

Contributory negligence; elimination as bar to recovery; comparative negligence to determine damages

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, or was not greater than the combined negligence of the persons against whom recovery is sought. Any damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering.

N.J.Stat.Ann. § 2A:15–5.1 (West Supp.1986).

contacts approach as "indiscriminate," and stated that it had been rejected by these later cases because "it bore no reasonable relation to the underlying policies of conflicting rules of recovery in tort actions." *Id.*, 480 N.E.2d at 684, 491 N.Y.S.2d at 95. As a result, *Schultz* held, "[i]nterest analysis became the relevant analytical approach to choice of law in tort actions in New York." *Id.*, 480 N.E.2d at 684, 491 N.Y.S.2d at 95.

Under an interest analysis approach, the court determines which jurisdiction has the greatest interest in applying its law to the litigation. In such an examination, "the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.*, 480 N.E.2d at 684, 491 N.Y.S.2d at 95 (brackets in original) (quoting *Miller v. Miller*, 22 N.Y.2d 12, 16, 237 N.E.2d 877, 879, 290 N.Y.S.2d 734, 737 (1968)).

*Schultz* instructs that a choice-of-law inquiry begin by focusing upon the tort issue that is the subject of the conflict. When the rules involve standards of conduct, "the law of the place of the tort 'will usually have a predominant, if not exclusive, concern.'" *Schultz, supra,* 65 N.Y.2d at 198, 480 N.E.2d at 684, 491 N.Y.S.2d at 95 (quoting *Babcock v. Jackson, supra,* 12 N.Y.2d at 483, 191 N.E.2d at 284, 240 N.Y.S.2d at 750). Conversely, when the conflicting rules involve loss allocation, the locus jurisdiction's interest is less important. *See Schultz, supra,* 65 N.Y.2d at 198, 480 N.E.2d at 685, 491 N.Y.S.2d at 96.

Although the Court of Appeals has not provided a touchstone to distinguish "appropriate standards of conduct" rules from those that pertain to "loss allocation," there is little doubt that it would place comparative negligence statutes under the latter heading; such statutes allocate losses "that result from admittedly tortious conduct." *Id.*, 480 N.E.2d at 685, 491 N.Y.S.2d at 96 (examples of loss allocating rules are rules limiting damages in wrongful death actions vicarious liability rules, and immunities from suit). *See generally* W.

Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts § 67, at 470–71 (5th ed. 1984) (discussion of comparative negligence systems as "Apportionment of Damages"). Thus, the loss allocation choice-of-law rules apply.

*Babcock* and several of its progeny were actions involving codomiciliaries relating to tortious conduct in a foreign jurisdiction. *Schultz* establishes that these cases applied the loss allocation rules of the jurisdiction of common domicile because of that jurisdiction's "interest in enforcing the decisions of both parties to accept both the benefits and the burdens of identifying with that jurisdiction and to submit themselves to its authority." *Schultz, supra,* 65 N.Y.2d at 198, 480 N.E.2d at 685, 491 N.Y.S.2d at 96 (explaining *Tooker v. Lopez,* 24 N.Y.2d 569, 249 N.E.2d 394, 301 N.Y.S.2d 519 (1969) (parties were New York domiciliaries; locus of tort was Michigan; court applied New York law, which permitted recovery, rather than Michigan guest statute); *Miller v. Miller, supra,* (parties were New York domiciliaries; locus of tort was Maine; court applied New York law, which permitted full recovery, rather than Maine's wrongful death recovery limitation); *Babcock v. Jackson, supra,* (parties were New York domiciliaries; locus of tort was Ontario, Canada; court applied New York law rather than Ontario guest statute)).

Where, as here, the plaintiff and defendant have different domiciles, the rules are less clear. In *Neumeier v. Kuehner,* 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y.S.2d 64 (1972), the Court of Appeals held that an action brought by a domiciliary of Ontario, Canada, against a New York domiciliary, involving an automobile accident in Ontario, would be governed by Ontario's guest statute. *Id.* at 128–29, 286 N.E.2d at 458, 335 N.Y.S.2d at 70. The court reasoned that applying New York's rule in favor of an Ontario plaintiff against a New York defendant would not "further the substantive law purposes of New York." *Id.* at 129, 286 N.E.2d at 458, 335 N.Y.S.2d at 70. In the course of its interest analysis discus-

sion, the court adopted several rules that it characterized as "sound for situations involving guest statutes in conflicts settings." *Id.* at 128, 286 N.E.2d at 457, 335 N.Y.S.2d at 70. The third rule, applicable in *Neumeier* and to this case, reads:

> In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Id.*, 286 N.E.2d at 458, 335 N.Y.S.2d at 70 (quoting *Tooker v. Lopez, supra,* 24 N.Y.2d at 585, 249 N.E.2d at 404, 301 N.Y.S.2d at 533) (Fuld, C.J., concurring)).

It is conceptually difficult to reconcile this rule with the loss allocation interest analysis expounded in *Schultz* because it is not clear what interest, if any, vests in the locus jurisdiction by virtue of the parties' split domiciles. Thus, while the result in *Neumeier* was consistent with *Schultz's* interest analysis—because the Ontario statute was addressed to Ontario plaintiffs— *Neumeier*'s third rule may seem anomalous. The third rule is best read as an attempt to provide direction to a Court in the event that interest analysis itself is unable to reconcile competing interests. *Schultz* is the only Court of Appeals case after *Neumeier* to apply this third rule.

In *Schultz*, plaintiffs were New Jersey domiciliaries and the locus of the tort was New York. Defendants raised the defense of charitable immunity, which is recognized in New Jersey but not in New York. Applying these facts to a defendant domiciled in Ohio, the court held that *Neumeier*'s third rule should govern. The court then concluded that defendant met its burden of demonstrating that the law of the place of the tort should be displaced by New Jersey law. The court found that application of New Jersey law "would further [New Jer-

sey]'s interest in enforcing the decision of its domiciliaries to accept the burdens as well as the benefits of [New Jersey]'s loss-distribution tort rules and its interest in promoting the continuation and expansion of defendant's charitable activities in that State." *Schultz, supra,* 65 N.Y.2d at 201, 480 N.E.2d at 687, 491 N.Y.S.2d at 98. Application of New Jersey law was found not to frustrate New York's substantive law purposes because New York did not have a significant interest in applying its law to the litigation. *Id.,* 480 N.E.2d at 687, 491 N.Y.S.2d at 98.

■ Applying New York's protean choice-of-law rules to this case, I conclude that because the parties do not share a common domicile, the third *Neumeier* rule must be applied. Thus, the law of the locus jurisdiction, New Jersey, will govern unless "it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Neumeier v. Kuehner, supra,* 31 N.Y.2d at 128, 286 N.E.2d at 458, 335 N.Y.S.2d at 70 (quoting *Tooker v. Lopez, supra,* 24 N.Y.2d at 585, 249 N.E.2d at 404, 301 N.Y.S.2d at 533 (Fuld, C.J., concurring)).

■ Here, plaintiffs have met their burden of demonstrating that New York law should displace New Jersey law. First, New York has an interest in protecting New York domiciliaries injured in foreign jurisdictions. *Cf. Schultz, supra,* 65 N.Y.2d at 199, 480 N.E.2d at 685, 491 N.Y. S.2d at 96. Second, New Jersey has little or no interest in applying its own loss allocation rules to this case because no party involved is a New Jersey domiciliary. Defendant's argument that New Jersey does have such an interest because defendant is authorized to do business there overlooks the fact that defendant is also authorized to do business in New York. Finally, applying New York law in this case will neither "impair[ ] the smooth working of the multi-state system [n]or produce great uncertainty for litigants;" instead, this deci-

sion follows the long line of New York choice-of-law cases in which the law of plaintiff's jurisdiction was held to apply because that jurisdiction had the greatest interest in the litigation.

Accordingly, I hold that the New York comparative negligence statute, N.Y.C.P. L.R. § 1411 (McKinney 1976), applies to this claim.

SO ORDERED.