MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as Executor Under the Will of Charles F. Fogarty, Deceased, Plaintiff,

v.

The GARRETT CORPORATION, Colt Electronics Co., Inc., Phoenix Aerospace, Inc., and Lockheed Corp., Defendants.

MORGAN GUARANTY TRUST COMPANY OF NEW YORK, as Executor Under the Will of Charles F. Fogarty, Deceased, Plaintiff,

v.

TEXASGULF AVIATION, INC., Defendant.

Nos. 82 Civ. 0816(GLG), 82 Civ. 3640(GLG).

United States District Court, S.D. New York.

Jan. 6, 1986.

Kreindler & Kreindler, New York City, for plaintiff; Milton G. Sincoff, Steven R. Pounian, of counsel.

Townley & Updike, New York City, for Texasgulf Inc. and Texasgulf Aviation, Inc.; Frederick D. Berkon, of counsel.

Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant Garrett Corp.; Sherilyn Peterson, Keith Gerrard, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendants Garrett, Colt, and Phoenix; Randal R. Craft, Jr., of counsel.

## OPINION

GOETTEL, District Judge:

The plaintiff moves for reargument or reconsideration of this Court's May 8, 1985, decision regarding the admissibility of certain evidence. The plaintiff also moves for the application of Connecticut law to the issue of damages. For the reasons stated below, we deny the motion to reargue or reconsider and decline to apply Connecticut law to the issue of damages.

## I. BACKGROUND

These two actions, and numerous others, arise from the tragic crash of a private aircraft near the Westchester County Airport in February 1981. All six passengers and two crew members died in the accident.[1] The plaintiff, Morgan Guaranty Trust Company of New York ("Morgan"), is the executor of the estate of Charles F. Fogarty ("Fogarty"), one of the six passengers. Fogarty and his fellow passengers were employees of Texasgulf Inc. ("Texasgulf"), a Texas corporation with its principal place of business in Connecticut. The two crew members were employed by Texasgulf Aviation, Inc. ("TGA"), a Delaware corporation with its principal place of business in New York. TGA, which owned and operated the aircraft, is a wholly-owned subsidiary of Texasgulf.[2]

Texasgulf and TGA filed the initial action in this district, seeking damages for loss of the aircraft, against the corporations that designed, manufactured, sold, installed, maintained, or inspected the critical components whose failure partially caused the crash. These defendants (hereinafter referred to collectively as the "product defendants") were (1) Lockheed Corporation ("Lockheed"), which designed and manufactured the airplane that crashed; (2) Phoenix Aerospace, Inc. ("Phoenix"), an Arizona corporation that designed and manufactured certain equipment whose malfunction was partially responsible for the plane crash; (3) Colt Electronics Co. ("Colt"), a Kansas corporation that adapted the Phoenix equipment for use in the aircraft that crashed; and (4) The Garrett Corporation ("Garrett"), a California corporation, whose division, AiReasearch Aviation Company, located in Islip, New York, installed the equipment on the aircraft.

Shortly thereafter, the estates of the six passengers filed wrongful death actions in the Southern District of New York against the product defendants and TGA. The crew members' estates brought similar actions against Texasgulf and the products defendants.[3] The product defendants impleaded Texasgulf and TGA, asserting claims for contribution, in suits in which one or the other had not been sued directly. All the suits were consolidated for purposes of determining liability but not damages.

Texasgulf and TGA moved for summary judgment on two grounds. First, they contended that, as employers, they were immune from both direct and indirect claims under pertinent workers' compensation laws. Second, they asserted that six plaintiffs had signed releases, relieving Texas-

---

1. The facts underlying these and other related cases are set forth in greater detail in this Court's decisions in *Gregory v. Garrett Corp.*, 578 F.Supp. 871 (S.D.N.Y.1983), and *Texasgulf Inc. v. Colt Electronics Co.*, 615 F.Supp. 648 (S.D.N.Y.1984). *See also Gregory v. Garrett Corp.*, 589 F.Supp. 296 (1984).

2. Although TGA is a wholly owned subsidiary of Texasgulf, the two corporations are separate entities, *see infra* p. 755, with separate corporate citizenship. The plaintiff suggests that, because Connecticut is the financial center of the parent corporation, Texasgulf, it should also be considered TGA's principal place of business. We reject this argument, having already held that

TGA's principal place of business is New York. Transcript of Oral Argument on Motions for Application of Connecticut Law, June 20, 1985, at 7, 14. *See Gregory v. Garrett Corp., supra*, 578 F.Supp. at 881.

3. Claims were also filed against the United States of America, as responsible for the alleged negligence of the air traffic controllers at the Westchester County Airport. Under the Federal Tort Claims Act, 28 U.S.C. § 2402 (1982), the Court rather than a jury determined the Government's liability. We found the United States in no way liable for the February 1981 crash. *See Texasgulf Inc. v. Colt Electronics Co., supra*, 615 F.Supp. at 662.

gulf and TGA of any tort liability or liability for contribution.

In deciding the summary judgment motion on the immunity issue, the Court was initially faced with a choice of law question. New York had an interest in applying its law since, in addition to being the forum state, it was also the site of the crash and much of the conduct precipitating it. The states of Connecticut and North Carolina had an interest in applying their law since two of the decedents were North Carolina domiciliaries and the others, including Fogarty, were Connecticut domiciliaries. After full consideration of New York's choice of law rules, we applied New York law, concluding as follows:

> A New York court, confronted with a tort claim based upon events and conduct occurring primarily in New York and knowing the striking stand taken in *Dole* [*v. Dow Chemical Co.*, 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972)] on the issue of third party contribution, a position diametrically opposed to that of the majority of states, would have no hesitation in applying New York law here. Not to do so would be to undermine one of the primary purposes of New York's rule, that is to deter tortious conduct by attributing liability and damages among joint tortfeasors in proportion to their relative responsibility for injuries and losses, regardless of whether one of the tortfeasors happens to be an employer. This rule after all is one that implements the "tort policy goals of deterrence, equitable loss sharing by all wrongdoers, effective loss distribution over a large segment of society, and rapid compensation of the plaintiff...." *Id.* at 150, 282 N.E.2d at 295, 331 N.Y. S.2d at 389 (quoting Werner, *Contribution and Indemnity*, 57 Cal.L.Rev. 490, 516 (1969)). Because *Dole* itself was a workers' compensation case and because the rule it announced is in great part designed to deter tortious conduct, the Court does not see how in the instant

case it can apply the opposite rule of Connecticut when New York has so many critical contacts with the parties and events in question.

*Gregory v. Garrett Corp.*, 578 F.Supp. 871, 883 (S.D.N.Y.1983).

We denied the motion for summary judgment on both grounds, primarily because material issues of fact required a full evidentiary hearing. *Id.* at 886. *See Gregory v. Garrett Corp.*, 578 F.Supp. 890, 893 (S.D.N.Y.1983) (denying summary judgment on the release issue). Thereafter, we granted a motion by Texasgulf and TGA for a trifurcated trial with the affirmative defenses of release and workers compensation immunity to be tried first, and the issues of liability and, if necessary, damages to be tried later. The affirmative defenses were tried to a jury for five weeks in spring 1984. In answering special interrogatories, that jury found, *inter alia*, that Texasgulf and TGA were separate entities, and that TGA, not Texasgulf, was the employer of the flight crew and operator of the aircraft that crashed. Since only TGA employed the crew members, their estates could maintain direct claims against Texasgulf. Since only Texasgulf employed the passengers, their estates could maintain direct claims against TGA. Under New York law, the product defendants could pursue third-party claims for contribution against Texasgulf or TGA when either was not sued directly.

Several months later in 1984, the issue of liability was tried before another jury for a period of about ten weeks. The jury returned a verdict in favor of the plaintiffs, finding certain defendants liable in the following proportions: Texasgulf[4] 70%, Garrett 20%, Colt and Phoenix 5% each, and Lockheed not liable.

The final stage in these proceedings will be separate damage trials for each plaintiff. Prior to the damage trials, the parties have sought rulings on numerous *in li-*

---

**4.** Because of the earlier findings that permitted direct suit against TGA and third-party claims against Texasgulf, these corporations were treat-

ed as a single entity for purposes of determining liability.

*mine* evidentiary matters. The instant motions seek reargument or reconsideration of one *in limine* ruling as well as application of Connecticut law to the issue of damages.

## II. DISCUSSION

### A. *Motion to Reargue or Reconsider*

■ The *in limine* motion at issue sought to exclude evidence of three separate payments made to the plaintiffs—a pension benefit, a survivorship benefit, and a bonus plan payment. Our ruling regarding each payment was guided by the "collateral source doctrine," which provides that a defendant cannot reduce its liability by showing that a plaintiff received benefits from another source. *Morgan Guaranty Trust Co. v. Texasgulf Aviation, Inc.*, No. 82–3649, slip op. at 2 (S.D.N.Y. May 8, 1985). However, the collateral source doctrine does not bar evidence offered to show that the identical payment claimed as lost was in fact paid. This was the issue regarding the pension payment. We held that evidence of the pension plan payment was admissible to rebut a claim of lost support from allegedly lost pension benefits. *Id.* at 6–7. We found the survivorship benefit to be similar to a death benefit. The right to this payment arose from services rendered by the decedent. It vested on his first day of employment and was paid only because the employee died before retirement. We held that evidence of this payment was inadmissible under New York law since it was a benefit for previously extended consideration. *Id.* at 4. We reserved for the jury the factual question of

whether the bonus payment was gratuitous or obligatory. Under New York law, evidence of a payment made gratuitously would be admissible.[5] *Id.* at 3–4. *See Cunningham v. Rederiet Vindeggen*, 333 F.2d 308, 316 (2d Cir.1964).

The plaintiff moves for reargument or reconsideration of our May 8, 1985, decision on two grounds. First, it contends that permitting evidence of some of these payments to go to the jury was incorrect under New York law. Second, it proposes that a recent New York Court of Appeals decision, *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 480 N.E.2d 679, 491 N.Y.S.2d 90 (1985), compels the application of Connecticut rather than New York law to that *in limine* evidentiary issue.

■ Local Rule 3(j) of the Rules of Civil Procedure for the Southern District of New York requires a party seeking reargument to set forth any matters or controlling decisions overlooked by the court. Other than the *Schultz* case, the plaintiff has cited no authority or controlling decisions overlooked by this Court.[6] A request for reargument is not an occasion to reassert arguments previously raised, but dismissed by the court. *See Rosen v. Dick*, 83 F.R.D. 540, 544 (S.D.N.Y.1979), *modified on other grounds*, 639 F.2d 82 (2d Cir.1980). Even assuming, *arguendo*, that the Court "overlooked" *Schultz*, that case does not alter our earlier decision. As discussed at length below we find nothing in *Schultz* requiring the application of Connecticut law to the issue of damages in these cases. In view of this, it would be inappropriate to apply Connecticut law to an *in limine* evidentiary decision that will affect proof of

---

**5.** Our holding regarding the bonus plan payments does not preclude evidence offered to prove that a particular bonus payment claimed as lost was in fact paid, gratuitously or otherwise. *See* Transcript of Oral Argument, June 20, 1985, at 40. According to the defendants, the plaintiff has included within its claim for lost salary in 1981 a lost bonus payment for that year. The defendants contend that this allegedly "lost" bonus for 1981 was based on the company's performance during 1980, and was in fact paid to Fogarty's estate post-mortem. Evidence of this particular bonus payment will be admissible.

**6.** The plaintiff notes that the decision in *Schultz* was published in the New York Law Journal two days prior to our May 8, 1985, decision. The plaintiff did not, however, call the Court's attention to the New York Court of Appeals decision at that time. Nor did any party previously cite the Appellate Division decision, issued a year earlier, which the Court of Appeals affirmed. *See Schultz v. Boy Scouts of America, Inc.*, 102 A.D.2d 100, 476 N.Y.S.2d 309 (1st Dep't 1984).

damages. Accordingly, we deny the plaintiff's motion for reargument or reconsideration in its entirety.

### B. Motion for Application of Connecticut Law

In a diversity action, a federal court must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since choice of law rules are substantive, we must apply the law that a New York State court would apply. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). *Schultz* is the most recent pronouncement of New York's highest court regarding choice of law issues. The instant motions require us to decide whether *Schultz* mandates application of Connecticut law to the damage issues in these cases, including those presented by certain *in limine* motions.

Defendants and third-party plaintiffs Texasgulf and TGA take no position regarding the application of Connecticut law to the issue of damages. However, they argue that, should this Court determine that Connecticut law governs damages, Connecticut law should be applied retroactively to the issue of workers' compensation immunity. Our holding *infra* that New York, rather than Connecticut, law is applicable to the issue of damages in these cases effectively moots this argument.[7]

#### 1. The *Schultz* case.

The plaintiffs in *Schultz* were New Jersey residents. They brought suit in New York against the Boy Scouts of America, a New Jersey domiciliary, and the Franciscan Brothers of the Poor, an Ohio domiciliary. The plaintiffs were the parents of two young boys who had been sexually abused by the boys' teacher and scoutmaster, employed by the defendants. The parents also asserted a claim for the wrongful death of one son who subsequently committed suicide.

The plaintiffs had commenced a similar action in New Jersey against the Roman Catholic Archdiocese of Newark. That action was dismissed based upon New Jersey's Charitable Immunity Statute, N.J. Stat.Ann. § 2A:53A–7 (West Supp. 1985). The defendants in the New York action moved for summary judgment, which was granted on the ground that New Jersey law was applicable. New Jersey's immunity statute barred suit against the Boy Scouts and the Franciscan Brothers as it had against the Roman Catholic Archdiocese; the plaintiffs were collaterally estopped from relitigating the New Jersey court's interpretation of New Jersey law. The plaintiffs appealed the dismissal of the New York action, urging the court to apply New York law, which no longer recognizes charitable immunity. The Appellate Division affirmed the dismissal. *Schultz v. Boy Scouts of America, Inc.*, 102 A.D.2d 100, 476 N.Y.S.2d 309 (1st Dep't 1984). The plaintiffs then appealed to the New York Court of Appeals, which again considered whether the appropriate choice of law should be that of the parties' domicile or of the forum and locus of at least some of the tortious conduct.

The New York Court of Appeals actually considered two choice-of-law situations in *Schultz*—a "common-domicile" and a "split-domicile" situation. The plaintiffs and defendant Boy Scouts were both New

---

7. We note, however, that analysis of the workers' compensation immunity issue in light of *Schultz* suggests even more compelling reasons for applying New York law to the immunity issue than to the damage issue. As discussed *infra*, *Schultz* is primarily concerned with choice of law when the rules in conflict deal with allocating loss. New York's law on employer contribution is concerned with tort deterrence as well as loss allocation. *See Gregory v. Garrett Corp., supra,* 578 F.Supp. at 883.

*Schultz* notes that when conflicting laws relate to standards of conduct, the law of the locus jurisdiction should take precedence because of the "admonitory effect that applying its law will have on similar conduct in the future." *Schultz, supra,* 491 N.Y.S.2d at 956. New York's strong policy of deterring tortious conduct by requiring all tortfeasors, including employers, to pay their share of damages gives precedence to applying New York law to the workers' compensation immunity issue.

Jersey domiciliaries. However, defendant Fransciscan Brothers was an Ohio domiciliary. The allegedly tortious conduct and injuries occurred in New York and New Jersey. With respect to both defendants, the Court of Appeals affirmed the Appellate Division and applied New Jersey law. *Schultz, supra,* 491 N.Y.S.2d at 92.

The *Schultz* court reviewed the history of choice of law in New York.[8] Initially, choice of law was governed by the locus of the tort. However, in *Babcock v. Jackson,* 12 N.Y.2d 473, 191 N.E.2d 279, 240 N.Y. S.2d 743 (1963), the New York Court of Appeals abandoned this inflexible rule in favor of an analysis that balanced the interests of the various jurisdictions. Under *Babcock,* the law to be applied to resolve a particular issue is "the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue." *Id.* at 481, 191 N.E.2d at 282, 240 N.Y.S.2d at 748. In determining which jurisdiction has the greatest interest in a particular issue, the significant factors to consider are those relating to the underlying policy or "purpose of the particular laws in conflict." *Miller v. Miller,* 22 N.Y.2d 12, 15–16, 237 N.E.2d 877, 879, 290 N.Y.S.2d 734, 737 (1968). *See Tooker v. Lopez,* 24 N.Y.2d 569, 574, 249 N.E.2d 394, 397, 301 N.Y.S.2d 519, 523 (1969) (citing *Babcock, supra* ). As noted in *Schultz,* "[u]nder this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz, supra,* 491 N.Y.S.2d at 95.

Recognizing that the balancing of interests approach was creating *ad hoc* determinations and uncertainty, the Court of Appeals sought to bring some predictability to the analysis. Chief Judge Fuld proposed several rules for resolving choice-of-law issues, at least in cases involving conflicting automobile guest statutes. *Tooker v. Lopez, supra,* 24 N.Y.2d at 585, 249 N.E.2d at 404, 301 N.Y.S.2d at 532–33 (Fuld, C.J. concurring). These rules were then adopted by a majority of the New York Court of Appeals in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 286 N.E.2d 454, 335 N.Y. S.2d 64 (1972). The so-called *Neumeier* rules are as follows:

1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

3. In other situations, when the passenger and the driver are domiciled in different states, the rule is rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.

*Id.* at 128, 286 N.E.2d at 457–58, 335 N.Y. S.2d at 70. Although the *Neumeier* rules focus on conflicting automobile guest statutes, the *Schultz* court applies them to other conflicts situations.

The rules in conflict in *Schultz* concerned New Jersey's grant of charitable immunity, an immunity abolished under New York law. The court defined charitable immunity rules as "loss allocating"—rules affecting who bears a financial burden—rather than "conduct regulating"—rules affecting standards of conduct. When loss-allocation

---

**8.** For extensive discussion of the development of choice of law principles in New York *see* Korn, *The Choice-of-Law Revolution: A Critique,* 83 Colum.L.Rev. 772, 820–958 (1983).

rules are in conflict and the parties are *both* domiciliaries of the one state, as were the plaintiffs and defendant Boy Scouts, the *Schultz* court found persuasive reasons for applying the law of the parties' common domicile. This conclusion parallels the first *Neumeier* rule, which was derived from the facts of *Babcock*. However, since the *Schultz* facts presented a "reverse-*Babcock*" situation,[9] the court did not simply apply the first *Neumeier* rule, but rather engaged in a full *Babcock* interest analysis. *Schultz, supra*, 491 N.Y.S.2d at 97. It concluded that applying the law of the parties' common domicile when only loss-allocation rules were in conflict was appropriate because (1) it reduces forum shopping, since the same law will be applied whether the suit is brought in the state of common domicile or the locus jurisdiction; (2) it rebuts charges that the forum-locus is biased in favor of its own laws permitting recovery; and (3) it brings predictability and consistency to a confusing area of the law. *Id.* at 97–98.

The *Schultz* court then analyzed the choice of law relevant to defendant Franciscan Brothers, the so-called split-domicile situation. The Franciscan Brothers, an Ohio domiciliary, did not urge application of Ohio law. This, the *Schultz* court notes, was probably because Ohio offers only limited charitable immunity, which would have permitted suit on the facts in *Schultz*. Under these circumstances, the choice was between the law of New York and that of New Jersey. *Schultz, supra*, 491 N.Y.S.2d at 93. The Court of Appeals concluded that New Jersey law should apply. *Id.* at 98. In so finding, the *Schultz* court followed the third *Neumeier* rule, which provides that the law of the place of the tort will normally apply, unless displacing it "will advance the relevant substantive law purposes without impairing the smooth

working of the multi-state system or producing great uncertainty for litigants." *Neumeier, supra*, 31 N.Y.2d at 128, 286 N.E.2d at 458, 335 N.Y.S.2d at 70. The *Schultz* court found that displacing New York law was appropriate for several reasons. First, New Jersey had a substantial interest in encouraging charitable organizations doing business in New Jersey and in enforcing the plaintiffs' decision to accept the burdens as well as the benefits of New Jersey's loss-distribution tort rules. Applying New Jersey law would further this interest. On the other hand, New York had little interest in applying its law to the dispute in *Schultz*. The parties had only isolated and infrequent contacts with New York and, although no substantial law purpose of New York would be advanced by applying New Jersey law, none would be frustrated. Finally, the *Schultz* court found that applying New Jersey law would reduce the incentive for forum shopping and enhance the smooth working of the multi-state system, producing greater certainty for litigants. *Id.* 491 N.Y.S.2d at 98.

2. The Instant Choice of Law on Damages.

The plaintiff here contends that *Schultz* compels us to apply Connecticut law to the issue of damages because the decedent was domiciled in Connecticut and his widow and several of his children continue to reside there. The plaintiff's argument is misguided. *Schultz* does not mandate that the domicile of *a* party is the controlling factor in determining the appropriate choice of law. Rather, when parties share the same domicile, the common domicile will usually have a more significant interest in applying its law than will the forum-locus state, at least when the conflicting law at issue is one of loss allocation rather than conduct regulation.[10]

---

9. *See* Korn, *The Choice-of-Law Revolution: A Critique*, 83 Colum.L.Rev. 772, 789 (1983). In *Babcock*, the parties were New York domiciliaries and the tort occurred elsewhere. In the "reverse *Babcock*" situation of *Schultz*, the plaintiffs and defendant Boy Scouts were New

Jersey domiciliaries and the tort occurred, at least in part, in New York.

10. Even in the "common domicile" situation, the *Schultz* court found that when the conflicting laws relate to standards of conduct, the law of the locus jurisdiction takes precedence over

■ The "common-domicile" holding in *Schultz* is, however, inapplicable to the cases at bar because we are not dealing with a common-domicile situation.[11] These cases involve a "split-domicile" situation, analogous to the facts regarding defendant Franciscan Brothers in *Schultz*. Therefore, only that part of the *Schultz* holding arguably applies here. As discussed, *Schultz* reaffirms applying the third *Neumeier* rule in a "split-domicile" situation. Thus, we must apply the law of the locus of the tort,[12] New York, unless displacing it would advance some substantive law purpose of another jurisdiction. As discussed below, the plaintiff has demonstrated no substantive law purpose of Connecticut that would be advanced by displacing New York's law. *See Thomas v. Hanmer*, 109 A.D.2d 80, 86, 489 N.Y.S.2d 802 (4th Dep't 1985).

■ The wrongful death damage laws of New York and Connecticut differ in one significant respect. Connecticut permits recovery for two major elements of damages in a wrongful death action: (1) the value of decedent's lost earning capacity less prospective personal living expenses and (2) the value of decedent's lost enjoyment of life. *See Feldman v. Allegheny Airlines, Inc.*, 524 F.2d 384, 386 (2d Cir. 1975); *Perry v. Allegheny Airlines*, 489 F.2d 1349, 1351 (2d Cir.1974); *Katsetos v. Nolan*, 170 Conn. 637, 368 A.2d 172, 183 (1976). New York permits recovery only for the beneficiaries' loss of financial support and prospective inheritance. *See Parilis v. Feinstein*, 49 N.Y.2d 984, 406 N.E.2d 1059, 1060, 429 N.Y.S.2d 165, 166 (1980); *Odom v. Byrne*, 104 A.D.2d 863, 480 N.Y. S.2d 247, 249 (2d Dep't 1984); *Gilliard v. New York City Health and Hospitals Corp.*, 77 A.D.2d 532, 430 N.Y.S.2d 308, 309 (1st Dep't 1980). Recovery for a decedent's lost earnings under Connecticut law, or survivors' lost income under New York law, are likely to result in similar awards. Connecticut, however, allows an additional claim for the decedent's "lost enjoyment of life," a claim not allowed in New York.

New York courts have strictly construed the wrongful death statute, N.Y.Est.Powers & Trusts Law § 5–4.3 (McKinney 1984) ("EPTL"), to allow recovery only for pecu-

the common domicile's law because of the "admonitory effect that applying its law will have on similar conduct in the future." *Schultz, supra,* 491 N.Y.S.2d at 95–96.

11. Defendant Garrett proposes that New York is a "common domicile" because a New York plaintiff, Morgan, brought this suit as executor for decedent Fogarty, and because this Court has determined that a key defendant, TGA, has its principal place of business in New York. Therefore, Garrett argues, New York law should apply since it is the domicile of the significant parties as well as the site of the tort. Although this is an interesting and novel theory, we decline to adopt or rely on it. Morgan is essentially a nominal party in these suits. Fogarty was a Connecticut domiciliary and his widow and several of his children continue to reside there. However, Connecticut is not the common domicile because the only Connecticut defendant is Texasgulf, which is not a direct party to these actions.

12. The underlying event giving rise to these actions is the crash of an airplane. The plaintiff notes that many cases have found the site of an airplane crash to be extremely fortuitous and have thus given less weight to this factor in determining choice of law. *See, e.g., Cousins v.*

*Instrument Flyers, Inc.,* 44 N.Y.2d 698, 699, 376 N.E.2d 914, 915, 405 N.Y.S.2d 441, 442 (1978); *Thomas v. United Air Lines,* 24 N.Y.2d 714, 723, 249 N.E.2d 755, 759, 301 N.Y.S.2d 973, 979, *cert. denied,* 396 U.S. 991, 90 S.Ct. 484, 24 L.Ed.2d 453 (1969); *Long v. Pan American World Airways,* 16 N.Y.2d 337, 342, 213 N.E.2d 796, 798, 266 N.Y.S.2d 513, 516 (1965); *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 39, 172 N.E.2d 526, 527, 211 N.Y.S.2d 133, 135 (1961). Prior to trial, this Court commented on the fortuitousness of the instant air crash. *See Gregory v. Garrett Corp., supra,* 578 F.Supp. at 880 n. 11. However, the evidence adduced at the lengthy liability trial of the many related actions clearly indicates that the site of this accident was not so fortuitous as it might seem. The facts showed that the decision to fly the plane in its impaired condition was made in New York and almost the entire flight between Westchester County Airport and Toronto, Canada, was over New York State. In addition, almost all of the tortious conduct that caused the crash—the installation, maintenance, inspection, and testing of the defective parts—occurred in New York. New York's interest in applying its law to all issues in this action is, therefore, much greater than that of a state that is merely the "fortuitous" site of a plane crash. *See* Transcript of Oral Argument, June 20, 1985, at 11–12.

niary loss. *See O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 850 (2d Cir.1984); *Loetsch v. New York City Omnibus Corp.*, 291 N.Y. 308, 310, 52 N.E.2d 448 (1943). Accordingly, New York has consistently refused to allow recovery for such claims as mental or emotional suffering in wrongful death actions. *See Garland v. Herrin*, 724 F.2d 16 (2d Cir.1983); *Campbell v. Westmoreland Farms, Inc.*, 403 F.2d 939 (2d Cir.1968); *Slutsky v. Hospital for Joint Diseases*, 10 Misc.2d 853, 854, 169 N.Y.S.2d 780, 781 (Sup.Ct.1957). This policy would be frustrated by allowing the speculative claims that might be asserted under Connecticut's "loss of enjoyment of life" approach. *See* 9A R. Rohan, *N.Y.Civ.Prac.* ¶ 5–4.3[3][b] at 5–458 n. 5 (1984). We note, however, that since New York permits recovery for prejudgment interest, *see* EPTL § 5–4.3, a factor not included in Connecticut wrongful death damages, it is possible that an award under New York law will be as great, or greater, than under Connecticut law.

Connecticut's interest in these disputes is in promoting the financial welfare of its domiciliaries. Connecticut law calls for an award of "just damages." Conn.Gen.Stat. Ann. § 52–555 (West 1960 & Supp.1985). Applying New York law will not frustrate this policy. New York's law calls for "fair and just compensation." EPTL § 5–4.3. We are not dealing with an archaic or anachronistic law that would drastically limit or eliminate a damage award. *See O'Rourke v. Eastern Air Lines, Inc.*, supra, 730 F.2d at 850; *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir. 1978); *Rosenthal v. Warren*, 475 F.2d 438, 446 (2d Cir.1973); *Walkes v. Walkes*, 465 F.Supp. 638, 641–42 (S.D.N.Y.1979); *Miller v. Miller*, supra, 22 N.Y.2d at 18, 237 N.E.2d at 880, 290 N.Y.S.2d at 739; *Kilberg v. Northeast Airlines, Inc.*, 9 N.Y.2d 34, 40, 172 N.E.2d 526, 528, 211 N.Y.S.2d 133, 136 (1961). New York's law permitting recovery for pecuniary loss will adequately ensure that Connecticut's interest in compensating its domiciliaries will be satisfied. *Walkes v. Walkes*, supra, 465 F.Supp. at 642.

Finding no policy of Connecticut that will be advanced by applying Connecticut law, nor any Connecticut interest that will be frustrated by applying New York law, it is apparent that New York law should govern the damage issue in these cases. It is, in fact, New York rather than Connecticut that has substantial interests in applying its law to the issue of damages: (1) to determine the amount of any potential award against defendants either doing business or conducting business in New York, and (2) to discourage forum shopping. *See Schultz*, supra, 491 N.Y.S.2d at 98.

New York has a substantial interest in applying its law to regulate the conduct of those who do business within its borders. One aspect of this, although perhaps not central, is the amount of damages such a defendant must pay. *See O'Rourke v. Eastern Airlines, Inc.*, supra, 730 F.2d at 850; W. Reese, *Choice of Law in Torts and Contracts and Directions for the Future*, 16 Colum.J.Trans.L. 1, 14 (1977). TGA, the defendant found primarily liable for the airplane crash, had its headquarters in New York and conducted most of its business, at that time, in New York state. All of the other defendants found liable (Garrett, Phoenix, and Colt), conduct business in New York and were sued with respect to actions taken here. The parties' contacts with New York were not isolated and infrequent as in *Schultz*. TGA maintained a fleet of corporate jets for Texasgulf at Westchester County Airport, New York. Any employees of Texasgulf traveling on corporate planes used that New York facility. Furthermore, with regard to the negligent conduct that caused the crash, the airplane management and operations decisions, along with the installation, testing, and maintenance of the defective equipment all occurred in New York. In sum, the interrelationship of all of the parties was centered in New York. *See Gregory v. Garrett Corp.*, supra, 578 F.Supp. at 881–82 n. 13.

New York has a further interest in discouraging forum shopping. In these ac-

tions, the plaintiff brought suit on behalf of a Connecticut decedent in federal district court in New York. It has consistently argued, until now, that New York law applied. *See Cousins v. Instrument Flyers, Inc.,* 44 N.Y.2d 698, 700, 376 N.E.2d 914, 915, 405 N.Y.S.2d 441, 443 (1978). Had the plaintiff brought suit in a district court sitting in Connecticut, that state's choice of law rules would have compelled application of New York law to all substantive issues. *See Halstead v. United States,* 535 F.Supp. 782, 786, 788–89 (D.Conn.1982); *Patch v. Stanley Works,* 448 F.2d 483, 487 n. 7 (2d Cir.1971); *Ritcher v. Childers,* 2 Conn.App. 315, 478 A.2d 613, 614 n. 5 (1984). To grant the plaintiff's motion and apply Connecticut law in this New York forum would condone forum shopping and impair "the smooth working of the multi-state system." [13] *Neumeier, supra,* 31 N.Y.2d at 128, 286 N.E.2d at 458, 335 N.Y.S.2d at 70. *See Ramirez v. Pan American World Airways, Inc.,* Nos. 11585, 11587, 20797, 255/83, slip op. at 5 (Sup.Ct. Dec. 21, 1984), *aff'd,* 111 A.D.2d 602, 489 N.Y.S.2d 439 (1st Dep't 1985).

In sum, since New York is the site of the accident and the tortious conduct causing the accident, the principal place of business of a primary defendant, and the plaintiff's chosen forum, we believe that New York courts would apply New York's wrongful death damage law to the facts of these cases.[14]

**13.** The decision on this motion will impact on the damage trials in the related cases filed by other decedents' estates. Two of those actions involve domiciliaries of North Carolina; the rest involve Connecticut domiciliaries. Were we to decide that Connecticut law applied to the damage issue in the cases involving decedent Fogarty, we would be likely to apply North Carolina damage law to those cases involving decedents from that state. All parties in these and the related Texasgulf cases have proceeded through two lengthy preliminary trials, *see supra* pp. 755–756, on the assumption and expectation that New York law would apply to the issue of damages. Application of different law in different actions would promote uncertainty, encourage forum shopping, and defeat the parties' reasonable expectations. *See* Reese, *The Law Governing Airplane Accidents,* 39 Wash. & Lee L.Rev. 1303, 1306–07 (1982) (suggesting that

## III. CONCLUSION

. For the reasons discussed above, the plaintiff's motions are both denied.

SO ORDERED.

the plaintiffs' domicile should not be a factor at all in choice of law in multi-state aircrash cases).

**14.** The plaintiff relies on the case of *Haydu v. Hospital for Joint Diseases,* 557 F.Supp. 577 (S.D. N.Y.1983), in which Judge Lasker concluded that, on the facts of that case, a New York court would apply the law of the plaintiff's domicile rather than New York law, although New York was both the defendant's domicile and the locus of the wrongful death. We respect Judge Lasker's opinion. However, we agree with the Second Circuit that this is unlikely to have been a New York court's ruling in such a case. *O'Rourke v. Eastern Air Lines, Inc., supra,* 730 F.2d at 850 n. 12. The New York Court of Appeals decision in *Schultz* affirms this analysis.