DENNIS J. COONEY, Respondent, v OSGOOD MACHINERY, INC., Defendant and Third-Party Plaintiff-Respondent. PAUL MUELLER COMPANY, Third-Party Defendant-Appellant; HILL ACME COMPANY et al., Third-Party Defendants-Respondents.

Fourth Department, April 24, 1992

## APPEARANCES OF COUNSEL

*Hurwitz & Fine, P. C. (Sheldon Hurwitz* of counsel), for third-party defendant-appellant.

*Smith, Murphy & Schoepperle (Victor Oliveri* of counsel), for Osgood Machinery, Inc., third-party plaintiff-respondent.

*Bouvier, O'Connor (Chris Trapp* of counsel), for Hill Acme Company, third-party defendant-respondent.

*Saperston & Day, P. C. (Joseph Schnitter* of counsel), for Kling Brothers, Inc., third-party defendant-respondent.

*Farrell & Quackenbush* for American Standard, Inc., third-party defendant-respondent.

*Dempsey & Dempsey (Ellen Krebs* of counsel), for respondent.

### OPINION OF THE COURT

FALLON, J.

Plaintiff, a Missouri resident, was injured on October 26, 1978, during the course of his employment with third-party defendant Paul Mueller Company (Mueller), a Missouri corporation. The injury was sustained while plaintiff was cleaning a binding roll machine at Mueller's facility in Missouri. Defendant, Osgood Machinery, Inc. (Osgood), a New York corporation, was the distributor or broker on the original sale of the machine. The machine was resold when the original purchaser ceased operations and thereafter purchased by Mueller. Osgood was not involved in either of those transactions.

Prior to the incident giving rise to plaintiff's injuries, Mueller is alleged to have made certain modifications to the machine, which Osgood contends rendered the machine unsafe, and significantly increased the likelihood of plaintiff's injuries. Following commencement of plaintiff's action, Osgood commenced this third-party action against Mueller seeking contribution pursuant to CPLR article 14 *(see, Dole v Dow Chem. Co.,* 30 NY2d 143).

In denying Mueller's motion for summary judgment dismissing the third-party complaint and all cross claims, Supreme Court held that New York law and not Missouri law should apply here. Missouri law does not permit a third-party action for contribution against an employer in a situation such as

this* (Mo Rev Stat § 287.120 [1]; *State ex rel. Maryland Hgts. Concrete Contrs. v Ferriss,* 588 SW2d 489 [Mo]).

Traditional analysis of choice-of-law problems in tort actions typically involved application of the law of the place of the wrong *(Babcock v Jackson,* 12 NY2d 473; Restatement [First] of Conflict of Laws § 377). With the recognition that the law of a particular jurisdiction where only some of the parties were domiciled often had more contacts with and interest in the outcome of the litigation than the place of the wrong, the rule of *lex loci delicti* gradually gave way to more flexible approaches such as those which are founded on "grouping of contacts" and "interest analysis". Ultimately, "interest analysis" took hold as the prevailing analytical tool because quantitative contact grouping was found to be indiscriminate in the sense that it placed too much emphasis on certain contacts regardless of their significance in a particular case *(Schultz v Boy Scouts,* 65 NY2d 189, 196-197; *see also, Tooker v Lopez,* 24 NY2d 569, 576; *Miller v Miller,* 22 NY2d 12, 15-16; *Matter of Clark,* 21 NY2d 478, 485-486; *Matter of Crichton,* 20 NY2d 124, 135). Thus, the rule which evolved looked to "the law of the jurisdiction having the greatest interest in the litigation" and while contacts remained relevant to the inquiry, the only "facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict" *(Miller v Miller, supra,* at 15, 16). By and large, those contacts found to be most significant under that rule are the locus of the tort and the domicile of the parties *(Schultz v Boy Scouts, supra,* at 197; *Tooker v Lopez, supra,* at 576-577; *Neumeier v Kuehner,* 31 NY2d 121, 128). In the final analysis, the relative interest of the domicile and locus jurisdiction in having their law apply depends upon whether the rules in conflict are "conduct-regulating" or "loss-allocating" *(Schultz v Boy Scouts, supra,* at 200).

Rules which govern the ability of a tort-feasor to implead another potentially responsible party for contribution are matters of substantive law which exclusively relate to loss allocation and distribution *(Viera v Uniroyal, Inc.,* 142 Misc 2d

---

[8] Missouri Revised Statutes § 287.120 (1) provides where pertinent that: "[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person."

1099, 1107, *affd* 148 AD2d 349). Thus, we deal here with conflicting laws that are loss-allocating. Admittedly, the locus jurisdiction has less concern in protecting party expectations and in furthering a rule designed to govern future conduct where the conflicting rule is loss-allocating as compared to its concern where the rule defines a standard of care *(Schultz v Boy Scouts, supra,* at 198). Nonetheless, in the absence of common domicile "the law of the place of the tort will normally apply, unless displacing it ' "will advance" the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants' " *(Schultz v Boy Scouts, supra,* at 201, quoting *Neumeier v Kuehner,* 31 NY2d 121, 128, *supra; see also, LaForge v Normandin,* 158 AD2d 990).

The conflicting statutory schemes here at issue reflect that both New York and Missouri have significant interests at stake. Perhaps most obvious is the interest that New York has in protecting the contribution and apportionment rights of its domiciliaries *(see, LaForge v Normandin, supra).* Equally obvious, however, is Missouri's interest in validating its own statutory scheme, which immunizes an employer in such circumstances from contribution claims. Although *Schultz v Boy Scouts* suggests that this is a lesser concern, one cannot ignore Missouri's interest in protecting the reasonable expectations of its domiciliaries in such a case, especially where, as here, the employer-employee relationship at issue had its genesis in Missouri and where the wrong that is the predicate for plaintiff's claim in the main action occurred there. Although the interest of New York in furthering the right of its domiciliaries to seek contribution is both real and significant, we find it to be inadequate to displace Missouri's interest in maintaining effective administration of its statutory scheme relative to an incident and claim stemming from an employment relationship entered into and performed in that State between domiciliaries of that State.

In view of the paucity of "important contacts between the parties, the occurrence and the New York forum" *(Schultz v Boy Scouts, supra,* at 202), we do not take this occasion to consider whether enforcement of the Missouri law would offend the public policy of New York State. The mere fact that our legislative scheme is different is not enough to demonstrate that public policy forbids enforcement of the foreign law *(Loucks v Standard Oil Co.,* 224 NY 99, 110).

Inasmuch as Missouri law precludes such a third-party

contribution claim against an employer, Mueller's motion dismissing the third-party complaint and the cross claims interposed against it should have been granted.

CALLAHAN, J. P., GREEN, BALIO and LAWTON, JJ., concur.

Order unanimously reversed, on the law, with costs, motion granted and third-party complaint and cross claims dismissed.