Justine MASCARELLA, Individually and as Administratrix of the Estate of Neala Mascarella, Deceased, Plaintiff,

v.

Annette M. BROWN, M.D., Defendant.

Annette M. BROWN, M.D., Third–Party Plaintiff,

v.

E.R. SQUIBB & SONS, INC. and Elissa Santoro, M.D., Third–Party Defendants.

No. 91 Civ. 6596 (SS).

United States District Court, S.D. New York.

Feb. 5, 1993.

Garruto, Galex and Cantor P.C. by Todd Brandon Eder, East Brunswick, NJ, for plaintiff.

Gordon & Silber, P.C. by Michael Yoeli, New York City, for defendant/third-party plaintiff Annette M. Brown, M.D.

Sills Cummis Zuckerman Radin Tischman Epstein & Gross by Scott N. Rubin, New York City, for third-party defendant E.R. Squibb & Sons, Inc.

Connell, Foley & Geiser by George J. Kenny, Roseland, NJ, for third-party defendant Elissa Santoro, M.D.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

Third–Party Defendant E.R. Squibb & Sons, Inc. comes before the Court on a motion for summary judgment to dismiss the Third–Party Complaint against it. In addition, Defendant/Third–Party Plaintiff Annette M. Brown, M.D., moves to dismiss the second count of Plaintiff's First Amended Complaint to the extent that it is premised on the wrongful death law of North Carolina. For the reasons stated below, the motion of E.R. Squibb & Sons, Inc. is DENIED and Dr. Brown's motion is GRANTED.

### I. *Background*

The undisputed facts material to these motions are simple. During much of 1989, Neala Mascarella lived in New Jersey and worked for E.R. Squibb & Sons, Inc. ("E.R. Squibb") at its offices in New Brunswick, New Jersey. E.R. Squibb offered its employees a free mammography screening program and Ms. Mascarella participated in it. With the assistance of his staff, Dr. Clayton Leopold performed the mammography at E.R. Squibb's New Brunswick facility, where he is Associate Medical Director.

During the screening examination, Ms. Mascarella advised Dr. Leopold that her sister had recently died of breast cancer, and Dr. Leopold noted that fact in his medical records. Dr. Leopold's office then forwarded Ms. Mascarella's mammogram films to Dr. Annette Brown, an independent contractor radiologist in New York, for reading.

In October 1989, after reading and interpreting the mammogram films, Dr. Brown issued a report, which Ms. Mascarella subsequently received. The report stated that she had found "no radiographic evidence of malignancy." One year later, Ms. Mascarella was diagnosed with adenocarcinoma of the left breast. In July 1991, she filed a state court action in New Jersey against E.R. Squibb and Dr. Leopold, claiming that Dr. Leopold's treatment of her was negligent. She later voluntarily dismissed her state court action after learning from E.R. Squibb's counsel that they intended to file a motion to dismiss her claims as barred by New Jersey workers' compensation laws.

Several months after Ms. Mascarella had filed her state suit, she commenced this federal action against Dr. Brown for failure to diagnose her breast cancer. In June of 1992, Dr. Brown filed a Third–Party Complaint seeking indemnity and contribution from E.R. Squibb, claiming that it had negligently failed to inform her about the history of breast cancer in Ms. Mascarella's family. It is not clear whether Dr. Brown had been informed about Ms. Mascarella's family history of breast cancer, whether such notification would have made any difference in her recommendations to Ms. Mascarella, or whether such recommendations would have altered Ms. Mascarella's self-monitoring behavior.

At some time after Ms. Mascarella left E.R. Squibb's employment at the end of 1989, she moved to North Carolina. She died there on September 27, 1992, approximately one year after this action was filed. The Court subsequently permitted the filing of a First Amended Complaint substituting Ms. Mascarella's daughter as Administratrix and adding a wrongful death cause of action as a second count. The second count states that the Administratrix "commences this action for all losses suffered as a result of death by wrongful act pursuant to North Carolina's Statutes 28A–18–2, including but not limited to" various damages listed in the statute. Dr. Brown has moved to dismiss that portion of the First Amended Complaint which relies on North Carolina's wrongful death statute.

## II. *Discussion*

### A. *E.R. Squibb's Motion for Summary Judgment*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* Thus, the Court must perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

E.R. Squibb argues that New Jersey law governs the third-party action against it, and that it is entitled to judgment as a matter of law because New Jersey's worker compensation laws preclude third-party claims for contribution and indemnification against a plaintiff's employer. *See Ramos v. Browning Ferris Industries,* 103 N.J. 177, 510 A.2d 1152, 1155 (1986) (contribution); *Stephenson v. R.A. Jones & Co., Inc.,* 103 N.J. 194, 510 A.2d 1161, 1163 (1986) (indemnification). Not surprisingly, Dr. Brown argues that her third-party claim is governed by New York law, which recognizes third-party claims against a plaintiff's employer. *See, e.g., Iannielli v. Serota,* 169 A.D.2d 704, 564 N.Y.S.2d 189 (2d Dept.), *appeal denied,* 77 N.Y.2d 809, 571 N.Y.S.2d 912, 575 N.E.2d 398 (1991); 1974 Judicial Confer-

ence Report to 1974 Amendments of N.Y.CPLR 1401. Thus, E.R. Squibb's motion presents a choice of law question.

■ A federal district court must apply the choice of law rules of the state in which it resides. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020; 85 L.Ed. 1477 (1941); *AroChem International, Inc. v. Buirkle*, 968 F.2d 266, 269 (2d Cir.1992). Therefore, New York's choice of law rules must be used to determine which law governs this third-party action.

■ "Interest analysis [is] the relevant analytical approach to choice of law in tort actions in New York." *Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684. Under this framework, the "law of the jurisdiction having the greatest interest in the litigation will be applied and ... the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." *Id.* (citations omitted). Moreover, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Id.*

Thus, under New York law, the first step in resolving the choice of law question is to determine the domiciles of the parties. There is no dispute that Dr. Brown is domiciled in New York. There is some question, however, as to E.R. Squibb's domicile for purposes of this action.

At the time of Ms. Mascarella's mammogram in 1989, her employer was E.R. Squibb, a Delaware corporation with its principal place of business in New Jersey. Its parent, Squibb Corporation, merged with Bristol–Myers Company in October of 1989 but retained its status as a separate corporate entity. As a result of the merger, Bristol–Myers Company changed its name to Bristol Myers–Squibb Company. The merger, however, did not affect the status of E.R. Squibb, which remained an independent subsidiary of Squibb Corporation, with its principal place of business in New Jersey.

Dr. Brown argues that there is evidence that the Medical Department of E.R. Squibb, for whose purported negligence Dr. Brown seeks contribution and indemnification, is more properly considered to be a part of the larger Bristol Myers–Squibb Company, which is domiciled in New York. Nonetheless, the named third-party defendant is E.R. Squibb, and it is the domicile of E.R. Squibb that is significant. In sum, Dr. Brown has not come forward with sufficient evidence to support a finding that E.R. Squibb is domiciled anywhere other than New Jersey.

The second factor that must be considered in resolving the choice of law question is the locus of the tort. E.R. Squibb contends that its alleged negligence occurred in New Jersey, where it may have failed to question Ms. Mascarella about her family history of breast cancer, to record her answer, or properly to assemble the information for transmission to Dr. Brown. Dr. Brown, on the other hand, claims that the negligence occurred in New York because the mammograms and other materials supplied by the Medical Department were taken from New Jersey and delivered to her at E.R. Squibb's medical facility in New York. Thus, in her view, the locus of the negligence was New York, where incomplete materials were delivered to her.

■ The Court finds, at least at this stage, that Dr. Brown has proffered sufficient evidence to support a finding that the locus of the tort was New York, rather than New Jersey. Therefore, for purposes of determining E.R. Squibb's instant motion, the Court draws all reasonable inferences against the moving party and analyzes the choice of law question by using New York as the locus of the tort, as Dr. Brown suggests.

■ Having determined the domiciles of the parties and the site of the tort, the Court must then engage in "interest analysis" to determine which jurisdiction's law to apply. Under New York law, "the relative interests of the domicile and locus jurisdictions in having their law apply will depend on the particular tort issue in conflict in the case." *Schultz*, 65 N.Y.2d at

197–98, 491 N.Y.S.2d at 95, 480 N.E.2d at 198. For choice of law purposes, New York breaks down tort rules into two types: those involving "the appropriate standards of conduct, rules of the road, for example" and those that relate to "allocating losses that result from admittedly tortious conduct ... such as those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit." *Id.*, 65 N.Y.2d at 198, 491 N.Y.S.2d at 95–96, 480 N.E.2d at 684–685. Ordinarily, the Court must determine whether contribution and indemnification rules are "conduct-governing" or "loss-allocating." In this case, however, either classification leads to the same result as to the governing law.

Some courts have found contribution rules to be "conduct-governing." *See, e.g., Jones v. Munson Transp., Inc.*, 685 F.Supp. 879 (E.D.N.Y.1988); *Morgan Guaranty Trust Co. of New York v. Garrett Corp.*, 625 F.Supp. 752, 757 n. 7 (S.D.N.Y.1986). For conduct-governing rules, the law of the place of the tort will usually apply

> because the locus jurisdiction's interests in protecting the reasonable expectations of the parties who relied on it to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future assume critical importance and outweigh any interests of the common-domicile jurisdictions.

*Schultz*,[1] 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 684 (citations omitted). In other words, if contribution rules are "conduct-governing", then New York law applies to the third-party action before this Court.

A separate series of choice-of-law rules applies where the law in conflict is "loss-allocating." There is authority for the proposition that contribution laws are loss-allocating. *See, e.g., Cooney v. Osgood Machinery, Inc.*, 179 A.D.2d 240, 582 N.Y.S.2d 873 (4th Dept.), *leave to appeal granted*, 80 N.Y.2d 756, 588 N.Y.S.2d 824, 602 N.E.2d 232 (1992).[2]

The New York Court of Appeals first adopted the choice of law rules governing conflicts between loss-allocating rules in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). *Neumeier* concerned a conflict between automobile guest statutes, and in that context, the court stated the rules as follows:

(1) When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

(2) When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile.

Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

(3) In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the appli-

---

**1.** Although the justification for choosing the locus jurisdiction is presented by comparing its interests to those of the separate "common-domicile jurisdiction," the reasoning of the Court of Appeals would be even more compelling where, as here, the parties have different domiciles—and one of the parties is domiciled in the locus jurisdiction.

**2.** The contribution action in *Cooney* was between a third-party plaintiff domiciled in New York and a third-party defendant domiciled in Missouri, whose contribution laws with regard

to workers' compensation are similar to those of New Jersey. In contrast to the case at bar, however, the locus of the tort in *Cooney* appeared to be Missouri, not New York. Thus, the court adopted the law of the locus state (Missouri), and ruled that New York law should not displace it. If the Court of Appeals issues an opinion that raises a question about this Court's analysis of the Fourth Department's decision, this court may reconsider the choice of law question at that time.

cable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.

*Id.,* 31 N.Y.2d at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 457. Although the *Neumeier* rules were first stated in the context of automobile guest statutes, the Court of Appeals has since made clear their general applicability to conflicts between "loss-allocating" rules. *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679; *Barkanic v. General Admin. of CAAC,* 923 F.2d 957, 963 (2d Cir. 1991).

The Court believes that the proper rule to apply in this case is the second part of the second *Neumeier* rule. According to this rule, a tortfeasor who commits a tort in a foreign state and injures one of that state's domiciles "should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense." *Neumeier,* 31 N.Y.2d at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 458. In the case at bar, Dr. Brown, a New York domiciliary, seeks damages for the New York negligence of E.R. Squibb, a New Jersey tortfeasor. Thus, New Jersey law precluding contribution in such instances should not be "interpose[d] ... as a defense," and New York law governs.

Moreover, the extreme significance that New York places on making contribution available—even in third-party actions against a plaintiff's employer—suggests that there are no "special circumstances" significant enough to warrant displacing New York's rule. *See, e.g., Jones v. Munson Transp., Inc.,* 685 F.Supp. 879 (E.D.N.Y.1988); *Morgan Guaranty Trust Co. of New York v. Garrett Corp.,* 625 F.Supp. 752, 757 n. 7 (S.D.N.Y.1986).

Thus, having construed questions of material fact in favor of Dr. Brown, the nonmoving party, the Court concludes that E.R. Squibb has failed to prove that New York law should not apply. Since New York law allows Dr. Brown's third-party action for contribution against the plaintiff's employer, *see Iannielli v. Serota, supra,* E.R. Squibb has not convinced the Court that it is entitled to judgment as a matter of law.

■ E.R. Squibb contends that it is also entitled to summary judgment because the record would not support a finding that its negligence was a proximate cause of Ms. Mascarella's injury. The Court disagrees. The record would support a finding that E.R. Squibb negligently failed to notify Dr. Brown about Ms. Mascarella's family history of breast cancer, and that such failure was a proximate cause of Ms. Mascarella's injury. Again, E.R. Squibb has failed to prove that it is entitled to judgment as a matter of law.

### B. *Dr. Brown's Motion to Dismiss*

■ Dr. Brown's motion to dismiss also presents a choice of law question because North Carolina and New York differ in the breadth of recovery available to a plaintiff in an action for wrongful death. The differences between North Carolina and New York law that are pertinent to this case are the right to bring a cause of action for loss of society and companionship under North Carolina law, *see* North Carolina General Statute 28A–18–2(b)(4)(c), a cause of action for punitive damages under North Carolina law, *see id.* at 28A–18–2(b)(5), and North Carolina's absence of a requirement like that in New York that the jury must be told to consider taxes in its computation of damages. New York EPTL §§ 5–4.1 to 5–4.3.

Once again, the Court must apply the choice of law rules of New York to this issue. Under New York's "interest analysis" approach to choice of law questions in tort actions, the Court must begin by considering the parties' domiciles and the locus of the tort. *Schultz,* 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679. Dr. Brown is domiciled is New York. Whether Ms. Mascarella's domicile is considered North Carolina or New Jersey for purposes of this

action, the case involves a "split domicile" situation.

The rule that differs in the two jurisdictions concerns the available remedies in a wrongful death action, which is unquestionably a "loss allocation" rule. *See Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 685; *Barkanic,* 923 F.2d 957. Thus, the question is which loss allocation rule to apply—that of North Carolina or that of New York.

Both Dr. Brown and Ms. Mascarella suggest that the third *Neumeier* rule applies to the case at bar. This rule applies where the parties are domiciled in separate states and the locus of the tort is yet another state. Under this rule, the law of New York—the locus of the tort—would govern the action, unless "displacing it 'will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants.'" *Schultz,* 65 N.Y.2d at 201, 491 N.Y.S.2d at 98, 480 N.E.2d at 687 (quoting *Neumeier v. Kuehner,* 31 N.Y.2d 121, 128, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972)). North Carolina's interest in this matter is in seeing that its decedents are compensated for certain types of harm. While these interests may be important, they "do not go to the heart of this lawsuit, a malpractice action arising out of alleged conduct in New York." *Habrack v. Kupersmith,* 1988 WL 102037 (S.D.N.Y.1988). The Court thus finds that any interests that North Carolina may have in the application of its wrongful death laws are insufficient to displace New York law.

The Court notes, however, that the third *Neumeier* rule was applied in *Schultz* because the locus of the tort was separate from either party's domicile. Moreover, the language and context of the rule itself supports such an application. Here, however, the locus of the alleged malpractice is the same as Dr. Brown's domicile. Therefore, the more appropriate rule would appear to be the first part of the second *Neumeier* rule, which states that the law of the locus state applies if the tortfeasor is domiciled in that state and the other party has a different domicile. Here, the alleged malpractice occurred in New York, the state of Dr. Brown's domicile, but the plaintiff is domiciled elsewhere. Thus, even assuming Ms. Mascarella to be a North Carolina domiciliary, no additional liability should be imposed under North Carolina law—New York law governs the wrongful death action. *See Barkanic v. General Admin. of CAAC,* 923 F.2d 957 (2d Cir.1991) (Chinese wrongful death damage limitations applies where defendant's conduct occurred in China, its domicile, even though decedents were domiciled elsewhere). Moreover, there is no reason to displace New York law, especially since the second *Neumeier* rule is even more categorical than the third. *Neumeier,* 31 N.Y.2d 121, 128, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454, 457.

Thus, the Court finds that New York law governs the availability of damages in Ms. Mascarella's wrongful death action against Dr. Brown, whether the second or third *Neumeier* rule applies, and the second count of the First Amended Complaint should be dismissed to the extent that it relies on North Carolina law.

### III. *Conclusions*

E.R. Squibb's motion for summary judgment is DENIED. Dr. Brown's motion to dismiss the second count of the First Amended Complaint insofar as it relies on North Carolina wrongful death law is GRANTED, and the plaintiffs may submit a Second Amended Complaint modifying the second count in accordance with this order within 20 days.

SO ORDERED.